**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ANTONIO A. HERNANDEZ,**

      **Petitioner,**

**v.**                                **Case No. 8:14-cv-1006-MSS-AAS**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

      **Respondent.**
_____/

## O R D E R

Before the Court is Hernandez's petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state court convictions for robbery with a firearm and burglary with an assault. After reviewing the petition (Doc. 1), the response and appendix (Docs. 11 and 13), the reply (Doc. 16), and the supplemental briefs (Docs. 23 and 24), it is **ORDERED** that the petition is **GRANTED** in part and **DENIED** in part.

### PROCEDURAL BACKGROUND

A jury found Hernandez guilty of robbery with a firearm and burglary of a structure with an assault (Doc. 13, Ex. 1 at 56–57), and the state court sentenced him to ten years in prison for the robbery and a consecutive ten years for the burglary. (Doc. 13, Ex. 1 at 93–94) The state appellate court affirmed. (Doc. 13, Ex. 5)

The state appellate court denied Hernandez's petition alleging ineffective assistance of appellate counsel. (Doc. 13, Ex. 12) The post-conviction court denied Hernandez's motions for post-conviction relief without an evidentiary hearing (Doc. 13, Exs. 14, 18, 25, 27, and 32), and the state appellate court affirmed. (Doc. 13, Exs. 20, 29, and 34)

1

Hernandez's timely federal petition follows. This Court granted Hernandez an evidentiary hearing on the following claims: (1) trial counsel was ineffective for not conveying a plea offer (Ground Three, Ground Four, and Ground Five) and (2) the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing surveillance video of the crimes (Ground Six). (Doc. 30)

## FACTS[1]

Ketan Patel owned a supermarket in Winter Haven, Florida and employed Robert Slade. On the evening of March 19, 2009, Patel and Slade closed the store, and Patel started counting money in the cash register. A man with a gun entered the store, jumped over the counter, pointed the gun at Patel, and told him to get down. The armed man was wearing a mask, gloves, and a Dallas Cowboys jacket. The armed man took money from the cash register and a cash drawer and left. A surveillance camera recorded the robbery.

While reviewing the surveillance video, a detective noticed that the armed robber walked by Slade, the employee at the market, without telling him to get down. The detective also noticed that the armed robber first took money from the cash drawer instead of the cash register. The detective interrogated Slade. After waiving his constitutional rights, Slade identified Hernandez as the armed robber.

After waiving his constitutional rights, Hernandez admitted to the detective that he was the man with the gun. Hernandez claimed that Slade, who visited Hernandez's car repair shop several times, suggested that the owner of the market wanted someone to stage a robbery to defraud his insurance company. Hernandez claimed that he drove to the

---

[1] The factual summary derives from the briefs on direct appeal, trial transcripts, and post-conviction filings.

market, put on the jacket and the mask, went into the store with a black pellet gun, jumped over the counter, and grabbed $1,500.00 from the cash drawer and the cash register. He fled the scene, drove to another town, and threw away the mask, jacket, and gun. Several days later, Hernandez gave Robert $1,000.00 and kept $500.00.

Slade testified that he knew Hernandez because Slade's friend owned a store next to Hernandez's shop. Hernandez approached Slade with the plan and Slade initially agreed to the plan. The two planned for Slade to call Hernandez when Slade arrived at the market, to call a second time halfway through the workday, and to call a third time to signal to Hernandez to come inside the market. Slade called the first two times but did not call the third time because he wanted to back out of the plan. Hernandez robbed the store, even though Slade never called a third time. Hernandez gave Slade $700.00 as his share of the proceeds of the robbery. Slade denied that the store owner knew about the robbery but believed that the store owner may have overestimated the amount of loss from the robbery to his insurance company. Slade pleaded guilty and agreed to testify against Hernandez in exchange for a sentence not greater than fifteen years in prison.

The detective searched Hernandez's business and found a silver revolver. Slade identified the silver revolver as the gun that Hernandez used during the robbery. During the search, Hernandez lamented to another detective, "how could I have been so stupid to go along with this," and said that "he was wrong for doing the robbery but that he wasn't going to take the blame for everything."

## STANDARDS OF REVIEW

**AEDPA**

Because Hernandez filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A state court unreasonably applies clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). An unreasonable application is "different from an incorrect one." *Bell*, 535 U.S. at 694. Even clear error is not enough. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Hernandez asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 691. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105.

The state appellate court affirmed in an unexplained decision the post-conviction court's orders denying Hernandez's ineffective assistance of counsel claims. (Doc. 13, Exs. 20, 29, and 34) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The state appellate court denied the petition alleging ineffective assistance of appellate counsel in a decision without a written opinion. (Doc. 13, Ex. 12) Hernandez must show no reasonable basis for the denial of relief. *Richter*, 562 U.S. at 98.

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on state procedural grounds, the federal court instead denies the claim as procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Also, a federal court will not review a federal claim that the state court denied on an independent and adequate state procedural ground. *Coleman*, 501 U.S. at 729–30. If the last state court rejected the federal claim in an unexplained decision, the federal court looks through the unexplained decision to the last reasoned order to rule on the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). If the last reasoned order imposed a state procedural bar, the federal court presumes that the later unexplained decision did not silently disregard the bar and consider the merits. *Ylst*, 501 U.S. at 803.

A petitioner may excuse a procedural bar on federal habeas by either (1) showing cause for the default and actual prejudice from the alleged violation of federal law or (2)

demonstrating a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## SUMMARY OF RELIEF

Hernandez raises several grounds in his Section 2254 petition. The Court grants relief on Ground One, Ground Four, and Ground Nine. In Ground One, Hernandez asserts that appellate counsel was ineffective for not arguing on direct appeal that fundamental error arose from the trial court's failure to instruct the jury on consent to entry, an affirmative defense to burglary. In sub-claim A of Ground Nine, Hernandez asserts that trial counsel was ineffective for not requesting the instruction on the affirmative defense. In Ground Four, he asserts that trial counsel was ineffective for not communicating a five-year plea offer. The Court denies relief on all remaining grounds.

**Ground One and Ground Nine, Sub-claim A**

In Ground One, Hernandez asserts that appellate counsel was ineffective for not arguing on direct appeal that fundamental error arose from the trial court's failure to instruct the jury on consent to entry, an affirmative defense to burglary. (Doc. 1 at 8) In sub-claim A of Ground Nine, he asserts that trial counsel was ineffective for not requesting the instruction. (Doc. 1 at 21–22)

**Ground One – Ineffective Assistance of Appellate Counsel**

Hernandez contends that the trial court fundamentally erred by not instructing the jury that the prosecution had the burden to prove that either Hernandez was not invited to come behind the counter at the market, or the market was open to the public at the time that he entered. (Doc. 1 at 8) He asserts that he was deprived of his only affirmative defense to burglary without the instruction, and appellate counsel was ineffective for not raising the

issue on direct appeal as fundamental error. (Doc. 1 at 8) The state appellate court denied the claim in an unexplained decision, and the unexplained decision is an adjudication on the merits owed deference under Section 2254(d). (Doc. 13, Ex. 12) Hernandez must show that no reasonable basis exists for the denial of relief. *Richter*, 562 U.S. at 99.

*Strickland* applies to an ineffective assistance of appellate counsel claim. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Because trial counsel neither requested the instruction nor objected to the absence of the instruction (Doc. 13, Ex. 1, Trial Transcripts at 247–52, 281–88), appellate counsel was ineffective only if fundamental error arose from the absence of the instruction. *Pinkney v. Sec'y, Fla. Dep't Corrs.*, 876 F.3d 1290, 1296–97 (11th Cir. 2017). Because Hernandez demonstrates no reasonable basis existed for the state appellate court's denial of relief, the state appellate court unreasonably denied the claim.

The trial court instructed the jury on the crime of burglary as follows (Doc. 13, Ex. 1, Trial Transcripts at 293–94):

| | |
|---|---|
| [Court:] | Count two is alleged burglary. To prove the offense of burglary, there are — |
| | Okay. What this says is there's three elements of — I don't think there's but two. I've looked at the standard instruction in the book. If you'd like to come look at it before I proceed. |
| [Trial counsel:] | No, sir. Your Honor, I'm familiar with the instruction — |
| [Prosecutor:] | No. |
| [Trial counsel:] | — and I — I agree with you. |
| [Court:] | Just a misprint. |
| | There are two elements that the state would have to prove in the burden: First, |

that Mr. Hernandez entered a structure that was owned by and in possession of Ketan Petal. And second, that at the time of entering the structure, Mr. Hernandez had the intent to commit an offense in that structure.

Now, if Mr. Hernandez entered [the] premises that [was] open to the public but then entered an area of the premises that you knew was not open to the public, he committed a burglary if he entered that non-public area with the intent to commit an offense within that non-public area. You may infer that he had an intent to commit a crime inside a structure if the entry was done skillfully or without the consent of the owner or occupant. The intent with which an act is done is an operation of the mind and, therefore, it is not always capable of direct and positive proof. It may be established by circumstantial evidence like any other fact in the case. Now, even if the unlawful entry of a structure has been proved, if the evidence does not establish that that entry was done with the intent to commit an offense, the defendant must be found not guilty of burglary.

The Florida Standard Jury Instruction (Criminal) 13.1 (2009) (italics in original omitted) for the affirmative defense of consent to entry provides:

Give element 3 only if defendant meets his or her burden of production that he or she had an invitation or license to enter, or that the premises were open to the public. *See State v. Hicks*, 421 So. 2d 510 (Fla. 1982), and *State v. Waters*, 436 So. 2d 66 (Fla. 1983).

3. [(Defendant) was not [licensed] [invited] to enter the [structure] [conveyance].] [The premises were not open to the public at the time of the entering.]

10

Consent to entry is an affirmative defense — not an element of burglary. *State v. Hicks*, 421 So. 2d 510, 510–11 (Fla. 1982) ("We hold that consent to entry is an affirmative defense to, rather than an essential element of, burglary . . . ."). "Where the challenged jury instruction involves an affirmative defense, as opposed to an element of the crime, fundamental error only occurs where a jury instruction is 'so flawed as to deprive defendants claiming the defense . . . of a fair trial.'" *Martinez v. State*, 981 So. 2d 449, 455 (Fla. 2008) (quoting *Smith v. State*, 521 So. 2d 106, 108 (Fla. 1988)). "The failure to instruct on an affirmative defense is not fundamental error if the affirmative defense was not the defendant's sole or primary defense, or if the affirmative defense claim was 'extremely weak.'" *Romans v. State*, 221 So. 3d 647, 651 (Fla. 4th DCA 2017) (quoting *Martinez*, 981 So. 2d at 455–56).

In opening statements, trial counsel told the jury that the evidence would prove that Hernandez committed an "insurance scam" with the knowledge and agreement of the store owner and Slade. (Doc. 13, Ex. 1, Trial Transcripts at 94–102) The prosecution introduced into evidence a recording of the detective's interrogation of Hernandez just after his arrest. (Doc. 13, Ex. 1, Trial Transcripts at 157–79) During the interrogation, Hernandez told the detective that Slade approached him with a plan to stage a robbery at the market. (Doc. 13, Ex. 1, Trial Transcripts at 159–61) Slade told him that "the owner is cut on it" and "was going to have [Slade] to be working." (Doc. 13, Ex. 1, Trial Transcripts at 160–61) Hernandez agreed to find someone to commit the staged robbery. (Doc. 13, Ex. 1, Trial Transcripts at 162) Hernandez found someone who later backed out of the plan. (Doc. 13, Ex. 1, Trial Transcripts at 162–64) Several months later, Slade told Hernandez that the

11

owner wanted to stage the robbery on a Sunday because the register would have the most cash at that time. (Doc. 13, Ex. 1, Trial Transcripts at 163)

The day of the robbery, Slade called Hernandez and said that he was at the owner's house. (Doc. 13, Ex. 1, Trial Transcripts at 165) Hernandez heard Slade speak with the owner on a "two-way" device. (Doc. 13, Ex. 1, Trial Transcripts at 165) The owner said, "The store's fixing to close, and it's got to be done now. There's nobody here." (Doc. 13, Ex. 1, Trial Transcripts at 165) Slade told Hernandez to drive and park at his friend's house located near the store. (Doc. 13, Ex. 1, Trial Transcripts at 166–67)

Hernandez found a jacket, a black pellet gun, and a mask that Slade had placed in the front yard. (Doc. 13, Ex. 1, Trial Transcripts at 168, 172–73) Hernandez put on the jacket, ran into the store with the gun, took cash from the register and a drawer, and left. (Doc. 13, Ex. 1, Trial Transcripts at 169–71) Hernandez drove out of town to throw away the jacket, the gun, the mask, and his shoes. (Doc. 13, Ex. 1, Trial Transcripts at 174) Hernandez took $500.00 and gave Slade $1,000.00 to split with the owner. (Doc. 13, Ex. 1, Trial Transcripts at 175–76) Hernandez told the detective that the staged robbery was part of an "insurance scam." (Doc. 13, Ex. 1, Trial Transcripts at 200)

Accepting Hernandez's statements to the detective as true, the store owner invited Hernandez behind the counter to take the money, and the invitation was a defense to the burglary. *Hicks*, 421 So. 2d at 510–11. § 810.02(1)(b)(1), Fla. Stat. ("'[B]urglary' means: Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or **the defendant is licensed or invited to enter** . . . .") (bolding added).

Consent to entry was Hernandez's only viable defense to the burglary. Without the defense instruction, the trial court instructed the jury that the prosecution had to prove (1) Hernandez "entered a structure that was owned by and in possession of Ketan Petal," and (2) "at the time of entering the structure, [Hernandez] had the intent to commit an offense in that structure." (Doc. 13, Ex. 1, Trial Transcripts at 293–94) The trial court further instructed: "[I]f [Hernandez] entered [the] premises that [was] open to the public but then entered an area of the premises that you knew was not open to the public, he committed a burglary if he entered that non-public area with the intent to commit an offense within that non-public area." (*Id.*) Hernandez admitted to the detective that he entered the market and went behind the counter with the intent to defraud the insurance company. Without the consent to entry instruction, a diligent juror could have logically concluded that Hernandez had "the intent to commit an offense in that structure" and "the intent to commit an offense within that non-public area." (*Id.*)

Evidence in support of the defense was not extremely weak. The store owner testified that Hernandez entered the store with a gun, came behind the counter, and robbed him. (Doc. 13, Ex. 1, Trial Transcripts at 114–15, 121, 129–30) Hernandez told the detective that the store owner invited him into the store to stage the robbery and defraud his insurance company. (Doc. 13, Ex. 1, Trial Transcripts at 165–177, 200) On cross-examination, the store owner admitted that he received $5,000.00 from the insurance company for loss that he incurred from the robbery. (Doc. 13, Ex. 1, Trial Transcripts at 131) Both versions of events were equally consistent with the surveillance video and the other physical evidence of the crime. *Contrast with Martinez*, 981 So. 2d at 456–57 (holding that no fundamental error arose from erroneous affirmative defense instruction because evidence supporting defense

13

was "extremely weak," evidence proving guilt was based on "damning facts," and the possibility that the jury would have found the defendant not guilty based on the defense was "minimal at best"); *Day v. State*, 119 So. 3d 485, 490 (Fla. 1st DCA 2013) (holding that no fundamental error arose from the absence of an instruction on an affirmative defense because statements by the defendant during and after his arrest contradicted his testimony at trial and evidence presented by the defendant at trial weakened his defense).

During closing argument, trial counsel argued the consent to entry defense as follows (Doc. 13, Ex. 1, Trial Transcripts at 274):

> [Trial counsel:]   You can't find somebody guilty of burglary if in the burglary they walk in there and where they went to they had permission to be there. And Slade gave him that permission. And Slade was acting on behalf of the owner. And Slade told him to go back there, didn't he? Slade admits that. So how is that a burglary?
>
> You have two versions of the same story. Which one's the truth? Rest on that, ladies and gentlemen, and find the defendant not guilty.

The trial court instructed the jury to "follow the law spelled out in these [jury] instructions" and "[t]here aren't any other laws that will apply to this case." (Doc. 13, Ex. 1, Trial Transcripts at 308) This instruction would have expressly negated the asserted defense of consent to enter. Without the consent to entry instruction, the jury could not apply the defense, which trial counsel posited in his argument, to the evidence. Thus, the absence of the instruction deprived Hernandez of a fair trial. *Martinez*, 981 So. 2d at 455.

At the time of Hernandez's direct appeal, *Martinez v. State*, 981 So. 2d 449, 455 (Fla. 2008), held that fundamental error arises when the absence of an affirmative defense

14

instruction deprives the defense of a fair trial. In *Martinez*, the trial court instructed the jury with an erroneous self-defense instruction, and the defense failed to object to the erroneous instruction. *Martinez*, 981 So. 2d at 455. *Martinez* concluded that fundamental error did not arise from the erroneous instruction because "self-defense was not the only strategy pursued by Martinez," and "Martinez's claim of self-defense was extremely weak." *Martinez*, 981 So. 2d at 456. Because the invitation defense was Hernandez's only viable defense to the burglary, and evidence supporting the invitation defense was at least arguably trustworthy, objectively reasonable appellate counsel would have raised the fundamental error claim on Hernandez's direct appeal. *Strickland*, 466 U.S. at 689.

If appellate counsel had raised fundamental error on direct appeal, there is a reasonable probability that the state appellate court would have granted Hernandez relief and remanded for a new trial. *Strickland*, 466 U.S. at 694 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."); *Farina v. Sec'y, Fla. Dep't Corrs.*, 536 F. App'x 966, 980 (11th Cir. 2013) ("To determine whether there was prejudice, therefore, we must evaluate whether there was a reasonable probability that Mr. Farina's argument . . . would have won the day in 2001 on direct appeal.") (citing *Dell v. United States*, 710 F.3d 1267, 1274 (11th Cir. 2013)).

Although issued after Hernandez's direct appeal, *Faulk v. State*, 222 So. 3d 621 (Fla. 1st DCA 2017), applies *Martinez* and confirms that the outcome would likely have changed. In *Faulk*, the prosecution charged the defendant with burglary with a battery. *Faulk*, 222 So. 3d at 622. The victim accused the defendant of entering her car uninvited, demanding money, and battering her when she refused to comply with the demand. *Faulk*, 222 So. 3d

15

at 622. The defendant testified that he was a drug dealer and the victim invited him into her car to buy drugs. *Faulk*, 222 So. 3d at 622. The defendant admitted that he hit the victim because he gave her drugs and she refused to pay. *Faulk*, 222 So. 3d at 622. On appeal, the defendant argued that fundamental error arose from the trial court's failure to give an instruction on consent to entry. *Faulk*, 222 So. 3d at 623. *Faulk* reversed because invitation was the "sole theory of defense" and the defendant's "only viable defense to the burglary," and the jury had asked for clarification on the issue. *Faulk*, 222 So. 3d at 623–24. Because Hernandez admitted to conspiring to defraud the insurance company and claimed that the owner invited him to stage a robbery at the market, the absence of the same instruction deprived Hernandez of his sole defense theory and his only viable defense to the burglary. Consequently, the state appellate court would likely have granted Hernandez relief on direct appeal. *See also Andujar-Ruiz v. State*, 205 So. 3d 803, 807 (Fla. 2d DCA 2016) ("'[W]here . . . a trial judge gives an instruction that is an incorrect statement of the law and necessarily misleading to the jury, and the effect of that instruction is to negate the defendant's only defense, it is fundamental error and highly prejudicial to the defendant.'") (quoting *Williams v. State*, 982 So. 2d 1190, 1194 (Fla. 4th DCA 2008)).

The Court can surmise no reasonable basis for the denial of the relief. Perhaps the state appellate court concluded that the statements by Hernandez to the detective were not credible. The standard required the state appellate court to determine whether evidence at trial supporting the defense was "extremely weak." *Martinez*, 981 So. 2d at 456. Because no overwhelming or undisputed evidence refuted Hernandez's statements or his defense, the evidence supporting the defense was not "extremely weak." *See Morgan v.* State, 127 So. 3d 708, 714–15 (Fla. 5th DCA 2013). Perhaps the state appellate court concluded that the

16

defense was allowed to offer the evidence and make the argument sufficing to preserve the defense. But, as set forth above, the jury was expressly instructed that it should not consider any other legal bases in its deliberations than those provided by the court. Thus, the court must presume the jury followed the instructions given and that would have prevented the jury from considering the defense even though it was allowed to be argued.

Because no reasonable basis supports the state appellate court's denial of relief, the Court owes no deference under 28 U.S.C. § 2254(d) to the decision and, therefore, reviews the claim *de novo*. *Richter*, 562 U.S. at 98. *McGahee v. Ala. Dep't Corrs.*, 560 F.3d 1252, 1266 (11th Cir. 2009) ("Where we have determined that a state court decision is an unreasonable application of federal law under 28 U.S.C. § 2254(d), we are unconstrained by § 2254's deference and must undertake a *de novo* review of the record."). Reviewing the claim *de novo*, the Court concludes that Hernandez demonstrates both deficient performance and prejudice under *Strickland* for the reasons above.

Relief on Ground One is **GRANTED**.

**Ground Nine, Sub-claim A – Ineffective Assistance of Counsel**

Similarly, Hernandez asserts that trial counsel was ineffective for not requesting a jury instruction on consent to entry, an affirmative defense to burglary. (Doc. 1 at 21–22) He contends that both his audio-recorded statements to the detective and Slade's testimony at trial supported the instruction. (Doc. 1 at 21–22) The post-conviction court denied the claim as follows (Doc. 13, Ex. 14 at 4) (state court record citations omitted):

> . . . Defendant argues that trial counsel was ineffective for failing to request certain jury instructions. Defendant first argues that trial counsel did not request the third element in the burglary instruction — Defendant was not invited to enter the structure or the premises were not open to the public at the time of entering. There are only two burglary elements. The Court

17

did address the issue as to whether the premises are open to the public. The Court had reasoned earlier during a Motion for Judgment of Acquittal that the Defendant entered the area behind the counter which was not open to the public. The Court finds that the burglary instruction was properly read.

The trial court denied the defense's motion for judgment of acquittal as follows (Doc. 13, Ex. 1, Trial Transcripts at 249–51):

| | |
|---|---|
| [Trial counsel:] | Judge, if I might renew that on the burglary. I don't know how you can find burglary when — if they say the store is open. They said the store was still open. Ketan Patel said — |
| [Court:] | Can we come back to that? I gave you a chance to argue. Okay? I got to carry through with my train of thought. |
| [Trial counsel:] | Yes, sir. |
| . . . | |
| [Court:] | Now, let's go back to whether the state proved a burden. It's a public place. Open to the public at the time this supposedly took place, as I understood it. |
| [Trial counsel:] | Correct. |
| [Court:] | How is it a burglary? |
| [Prosecutor:] | Your Honor, he — he came into an area upon which he did not have permission of coming in it. He came over the back, Your Honor. That is an area that is not open to the public. And the manner in which he did it — |
| [Court:] | Do you have any pictures of this place? I'd like to see it. |
| [Prosecutor:] | Aside from the — we can cue up the video, Your Honor. |

[Court:]            Cue it in. I want to see what this place looks like.

(The video is reviewed at this time.)

[Court:]            The law, as I understand it, and until shown otherwise by case law, it is possible to burglarize a public place by entry into an area that is closed to the public. The film shows the robber jumping over the counter, going back behind the counter where the public is not allowed. Motion for directed verdict as to burglary is denied.

The state court unreasonably determined that the record refuted Hernandez's claim. 28 U.S.C. § 2254(d)(2). In his post-conviction motion, Hernandez asserted that trial counsel was ineffective for not requesting an instruction stating that the prosecution must prove that Hernandez was not licensed or invited to enter the store and the premises were not open to the public when Hernandez entered. (Doc. 13, Ex. 13 at 25) Fla. Std. Jury Instr. (Crim.) 13.1 (2009). The trial court's ruling on the motion for judgment of acquittal addressed only whether the portion of the premises that Hernandez entered was open to the public. (Doc. 13, Ex. 1, Trial Transcripts at 249–51) Also, the standard for reviewing a motion for judgment of acquittal differs substantially from the standard for determining whether the evidence supports a jury instruction. For the former, "[i]f, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Floyd v. State*, 913 So. 2d 564, 571 (Fla. 2005) (citation and internal quotations omitted). For the latter, "a defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support such instructions." *Smith v. State*, 424 So. 2d 726, 732 (Fla. 1982). A trial court neither weighs the evidence nor

views the evidence in the light most favorable to the prosecution to determine whether the jury instruction is appropriate. *Smith*, 424 So. 2d at 732. The post-conviction court unreasonably determined that the ruling on the motion for judgment of acquittal refuted the ineffective assistance of counsel claim. The state court record clearly and convincingly rebuts the post-conviction court's determination. 28 U.S.C. § 2254(e)(1).

Because no reasonable jurist would conclude that the trial court's ruling on the motion for judgment of acquittal refutes the ineffective assistance of counsel claim concerning the jury instruction, the Court reviews the claim *de novo*. *Cooper v. Sec'y, Dep't Corrs.*, 646 F.3d 1328, 1353 (11th Cir. 2011) ("When a state court unreasonably determines the facts relevant to a claim, 'we do not owe the state court's findings deference under AEDPA,' and we 'apply the pre-AEDPA *de novo* standard of review' to the habeas claim.") (citation omitted).

An objectively reasonable attorney would have requested the instruction for the consent to entry defense. *Krawczuk v. Sec'y, Fla. Dep't Corrs.*, 873 F.3d 1273, 1293 (11th Cir. 2017). If trial counsel had requested the instruction for the consent to entry defense, the trial court would likely have granted the request. When ruling on the motion for judgment of acquittal, the trial court appeared to understand that the prosecutor had the burden to prove that Hernandez lacked consent to enter the area behind the counter. Trial counsel simply failed to ask for an instruction requiring the jury to find that the prosecutor met this burden.

Even though the store owner denied that he conspired with Hernandez and Slade to stage the crime at his store (Doc. 13, Ex. 1, Trial Transcripts at 130), Hernandez's statements to the detective supported the instruction. (Doc. 13, Ex. 1, Trial Transcripts at 157–79) "A criminal defendant is entitled to have the jury instructed on the law applicable

to his or her theory of defense where there is any evidence to support it, no matter how weak or flimsy." *Elder v. State*, 296 So. 3d 440, 444 (Fla. 4th DCA 2020) (citation and quotation marks omitted). *Jackson v. State*, 253 So. 3d 738, 739–40 (Fla. 1st DCA 2018) (explaining that a criminal defendant is entitled to an instruction on his theory of defense "even if the only evidence of the defense is provided by the defendant's own testimony, and even if that testimony is weak or improbable") (citation and quotation marks omitted).

Trial counsel should have requested the jury instruction because consent to entry was Hernandez's only viable defense. As explained above, the trial court instructed the jury that the prosecution had to prove (1) Hernandez "entered a structure that was owned by and in possession of Ketan Petal," and (2) "at the time of entering the structure, [Hernandez] had the intent to commit an offense in that structure." (Doc. 13, Ex. 1, Trial Transcripts at 293–94) The trial court further instructed: "[I]f [Hernandez] entered [the] premises that [was] open to the public but then entered an area of the premises that you knew was not open to the public, he committed a burglary if he entered that non-public area with the intent to commit an offense within that non-public area." (*Id.*) Hernandez admitted to the detective that he entered the store and went behind the counter with the intent to defraud the insurance company. Without the consent to entry instruction, a diligent juror could have logically concluded that Hernandez had "the intent to commit an offense in that structure" and "the intent to commit an offense within that non-public area." (*Id.*) *Toole v. State*, 472 So. 2d 1174, 1175 (Fla. 1985) ("[B]eyond allegation and proof of unauthorized entry or remaining in a structure or conveyance, the essential element to be alleged and proven on a charge of burglary is the intent to commit an offense, **not the intent to commit a specified offense**, therein.") (bolding added).

Reasonable trial counsel would have requested the consent to entry instruction because without the instruction Hernandez had no defense to the burglary. *Lee v. Clarke*, 781 F.3d 114, 123–24 (4th Cir. 2015) (holding that counsel was ineffective for not requesting a heat of passion instruction because ample evidence supported the instruction); *Pirtle v. Morgan*, 313 F.3d 1160, 1169–72 (9th Cir. 2002) (holding that counsel was ineffective for not requesting a diminished capacity instruction because counsel could not tie the evidence to the law without the instruction); *Capps v. Sullivan*, 921 F.2d 260, 262 (10th Cir. 1990) (holding that counsel was ineffective for not requesting an entrapment instruction after the defendant testified and admitted to committing the crimes to support the defense).

Also, there is a reasonable probability that the outcome of trial would have changed if trial counsel had requested the instruction. *Strickland*, 466 U.S. at 694. The only dispute at trial was whether Hernandez committed the burglary or Hernandez conspired with Slade and the store owner to defraud the insurance company. If the trial court had instructed the jury on the consent to entry defense and if the jury believed that the owner invited Hernandez into the store to commit the insurance fraud, the jury would have acquitted Hernandez of the burglary. *Strickland*, 466 U.S. at 694 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."); *United States v. Span*, 75 F.3d 1383, 1390 (9th Cir. 1996) (finding prejudice from counsel's failure to ask for a self-defense instruction because "the instructions as given were quite misleading").

Without the instruction on consent to entry, the jury could not apply the law to the evidence. The absence of the instruction deprived Hernandez of his only viable defense.

Because Hernandez shows both deficient performance and prejudice under *Strickland*, he is entitled to relief. *Pirtle*, 313 F.3d at 1174 ("There is no countervailing possibility that the jury rejected the diminished capacity defense on the merits, because it was not told of the availability of the defense. . . . [W]e conclude that there is a reasonable probability that, but for Pirtle's counsel's deficient performance, the outcome of his trial would have been different.").

Relief on Ground Nine, Sub-claim A is **GRANTED**.

**Ground Four**

In Ground Four, Hernandez asserts that trial counsel was ineffective for not communicating a five-year plea offer and a ten-year plea offer. (Doc. 1 at 13–14)

### Ground Three and Ground Five — Related Claims

In Ground Three, Hernandez asserts that trial counsel was ineffective for not communicating the prosecutor's willingness to negotiate a ten-year plea offer. (Doc. 1 at 12–13) He raised this claim in his first state post-conviction motion and supported the claim with a note from the prosecutor's file. (Doc. 13, Ex. 13 at 5) In Ground Four, Hernandez asserts that trial counsel was ineffective for not communicating a five-year offer and a ten-year offer. (Doc. 1 at 13–15) He raised this claim in his second state post-conviction motion and supported the claim with affidavits by two witnesses who stated that trial counsel acknowledged the plea offer. (Doc. 13, Ex. 24 at 2–3) In Ground Five, Hernandez also asserts that trial counsel was ineffective for not communicating a five-year offer. (Doc. 1 at 15–16) He raised this claim in his third state post-conviction motion and supported the claim with a letter from trial counsel to the Florida Bar acknowledging the plea offer. (Doc. 13, Ex. 31 at 3–7)

As explained below, the Court denies relief for Ground Three because Hernandez fails to demonstrate that the state court unreasonably denied the claim. When Hernandez asserted the claim in his first state post-conviction motion, he did not have either the affidavits by the two witnesses or the letter to the Florida Bar to substantiate his claim. He supported his claim with a note from the prosecutor's file indicating that the prosecutor was only willing to negotiate a plea. Because the record at that time refuted Hernandez's claim that the prosecutor had extended a formal plea offer, the state court did not unreasonably deny the claim. *Frye*, 566 U.S. at 145. Also, the Court denies relief for Ground Five because the state court denied the claim as successive, the Respondent asserts that the claim is procedurally barred on federal habeas, and Hernandez fails to demonstrate cause and prejudice to excuse the procedural bar.

However, because Hernandez demonstrates that the post-conviction court unreasonably denied the claim in Ground Four under Section 2254(d) and demonstrates that he is entitled to relief under a *de novo* review, the Court grants relief only for Ground Four.

**Merits — Ground Four**

Hernandez asserts that trial counsel was ineffective for not communicating a five-year plea offer and ten-year plea offer. (Doc. 1 at 13–14) Attached to Hernandez's first post-conviction motion were affidavits by Ashley August and by James Key in support of his claim. (Doc. 1 at 13–14) August stated in her affidavit that trial counsel told her and James Key that "he had visited Antonio Hernandez in Polk Co. Jail and advised him that the state had an offer of five years." (Doc. 13, Ex. 27, Second Motion for Postconviction Relief, Exhibit 1 at 1) In his affidavit, Key likewise stated that trial counsel had "informed [him

and August] that there was a plea deal of five years offered for the case." (Doc. 13, Ex. 27, Second Motion for Postconviction Relief, Exhibit 1 at 2)

The post-conviction court denied the claim as follows (Doc. 13, Ex. 27 at 1) (bolding added):

> . . . Defendant argues that trial counsel failed to convey a five[-]year prison offer. Defendant claims that had he received such an offer, he would have accepted it. The State argues that Defendant's claim is both successive and **refuted by the record**. After review of the State's arguments, citations, and attachments to its [r]esponse, adopted and incorporated herein, the Court agrees.

Even though the post-conviction court denied the claim as successive, the Respondent fails to assert that Ground Four is procedurally barred from federal review (Doc. 11 at 20–23), and therefore waives that defense. *Smith v. Sec'y, Fla. Dep't Corrs.*, 572 F.3d 1327, 1340 (11th Cir. 2009) ("If . . . the petitioner did raise the claim in the state courts but not at the time or in the manner required by state procedural rules, the resulting procedural bar defense may be waived by the State's failure to assert it.") (citing *McNair v. Campbell*, 416 F.3d 1291, 1306 (11th Cir. 2005)).

The post-conviction court adopted the following argument in the prosecutor's response (Doc. 13, Ex. 26 at 1–6) (state court record citations omitted) (underline in original):

> In this successive motion, Defendant raises a claim of newly discovered evidence that he claims could not have been added to his previous collateral motion that is now on appeal. The substance of the claim is that Trial Counsel [ ] did not transmit a five-year prison offer from the prosecutor in this case [ ]. Defendant claims to have been made aware of this information on or about September 8, 2012.
>
> This claim is procedurally barred as successive; further, it is refuted by the Record, and to any extent the Record does not

25

speak to this claim it is facially insufficient to merit collateral relief. Defendant's first claim in his Motion for Postconviction Relief filed April 18, 2012 was that Trial Counsel did not advise Defendant that the State was allegedly willing to negotiate. The Court has summarily denied Defendant's other claims.

The Court has previously found that the Record shows that no plea offers of any kind were made in this case. In his original Motion for Postconviction Relief, Defendant claimed to have received a copy of the State's file in the case, presumably through a public records request. Defendant appended to that motion at his Exhibit "A" notes made by one of the intake prosecutors indicating that the victim "may have exaggerated" the losses in the case. Defendant interpreted that as a willingness of the State to negotiate. However, Defendant appended nothing indicating that any formal written offers, or even a tentative verbal offer, ever had been made. He does not correct that problem in his instant motion. There is no indication that any plea offer was ever made to Defendant in this matter.

The record affirmatively refutes the claim that a five[-]year offer was tendered to Defendant in this case. At sentencing, this Honorable Court, Tenth Circuit Judge, the Honorable Michael E. Raiden presiding, commented that the Court was unaware whether any "reasonable" offers had been made in the case prior to trial. Trial counsel then stated that "[f]or the record Judge, there were no offers made to my Client" in CF09-002318-XX.

Defendant attaches affidavits allegedly executed by James Key and Ashley August, friends of his, that claim Trial Counsel indicated to them that a five-year offer was conveyed by the prosecutor. But these alleged affidavits do not indicate which of Defendant's cases that Mr. Key and Ms. August were supposedly discussing with Trial Counsel. Defendant had one other case, CF09-000335-XX, a violation of probation matter that was active at the same time as the instant case. On October 28, 2009, Defendant pled guilty, was found to be in violation of probation, and was sentenced to five (5) years prison, consecutive to the trial result in CF09-002318-XX.[2] It is clear that the State's five-year offer was in <u>CF09-000335-XX</u> and not CF09-002318-XX, was conveyed to Defendant, and accepted by Defendant.

[2] The State notes that CF09-002318-XX concerned two first-degree felonies, punishable by life imprisonment. CF09-000335-XX was not nearly as serious, being originally concerned with three third-degree felonies, only one of which he was actually sentenced on.

Successive motions under Rule 3.850 are procedurally barred where the grounds raised in a prior motion were adjudicated on their merits. *See Christopher v. State*, 489 So. 2d 22, 24 (Fla. 1986). In this case, Defendant's first claim of error is fundamentally identical to the claim he raised in his first collateral motion, [which] the Court adjudicated on its merits and found it to be refuted by the Record. The same Record refutation exists here, especially given that Defendant did get a five-year offer on his violation of probation case involving third-degree felonies, and he pled out to it according to the judgment and sentence in that matter. Defendant appears to be confusing his cases, and given his demonstrated capacity for litigiousness, that is not surprising.[3]

[3] The pending appeal of Defendant's last collateral motion does not defeat jurisdiction if the Court considers this to be a new claim. *See Bryant v. State*, 37 Fla. L. Weekly D102 (Fla. 2d DCA Jan. 6, 2012).

Additionally, Defendant's former collateral motion is silent as to any substantive offers; this is surprising, as he clearly has possession of the prosecutor's entire file in the matter and would therefore have any formal offers, or notes of contact with Trial Counsel regarding informal offers, that were made.[4] Defendant should have raised any such offers in his former collateral motion, rather than engaging in the "uniformly condemned" practice of piecemeal litigation. *Demorizi v. Demorizi*, 851 So. 2d 243, 247 (Fla. 3d DCA 2003) (Ramirez, J., dissenting).

[4] The State denies that any offers of negotiated settlement were advanced in CF09-002318-XX.

Defendant's motion is also refuted by the Record, as Trial Counsel unambiguously put on the Record that no offers had been made to Defendant. If the court does not consider Trial Counsel's statement in the sentencing proceeding to be conclusive refutation, then Defendant's failure to show that the

alleged offer, as set out in the statements attributed by Mr. Keys and Ms. August to Trial Counsel, concerned this case and not Case No. CF09-000335-XX, renders his claim legally insufficient for failure to show prejudice. The remedy would be to allow Defendant thirty days to amend his claim, if he can do so. *See Spera v. State*, 971 So. 2d 754, 761 (Fla. 2007).

The state court unreasonably determined that: "The record affirmatively refutes the claim that a five[-]year offer was tendered to Defendant in this case." (Doc. 13, Ex. 26 at 3) The state court relied on trial counsel's representation at sentencing to conclude that the record refutes the claim. At sentencing, trial counsel told the trial judge: "For the record[,] Judge[,] there were no offers made to my client." (Doc. 13, Ex. 1 at 74) Yet, in affidavits attached to Hernandez's second post-conviction motion, August and Key swore that trial counsel told them that the prosecutor did extend a five-year offer. (Doc. 13, Ex. 24, Exhibit 1 at 1–2) The conflicting statements by trial counsel did not refute the claim.

Also, the state court unreasonably determined that the five-year offer referred to an offer that Hernandez accepted in a separate probation violation case. (Doc. 13, Ex. 26 at 4) Hernandez did not plead guilty to the probation violation. The judgment for the violation of probation attached to the prosecutor's response, adopted by the post-conviction court, is from case number 2009-CF-000**355**-XX. (Doc. 13, Ex. 26, Uniform Commitment to Custody of Department of Corrections) At trial, the prosecutor jointly tried the burglary and robbery with the probation violation. At the close of all evidence, the trial court found Hernandez violated the conditions of his probation in Case No. CF09-000355-XX as follows (Doc. 13, Ex. 1, Trial Transcripts at 279–81):

| [Court:] | [Trial counsel,] do you wish to put on anymore evidence regarding the violation of probation in this case? |
|---|---|
| [Trial counsel:] | No, sir. |

[Court:]          Do we have that file?

[Trial counsel:]  Judge, I don't know. I haven't looked at it.
                  I think the only basis for the violation is
                  the new charge.

[Court:]          Most likely. Let me take — for the record,
                  this is Case Number 09355 where the
                  defendant — let's see — pled to the
                  offense of grand theft of a motor vehicle
                  and they dropped burglary —

[Trial counsel:]  Correct.

[Court:]          — of a conveyance and placed [him] on 18
                  months' probation. There's two grounds
                  alleged. This is the affidavit of Probation
                  Officer Tinney on the 3rd of April, 2009,
                  violation of condition three by possessing,
                  carrying, or owning any weapon or
                  firearm based on the fact that the — his
                  having had a firearm in this case.

                  Violation of condition four, which is a fail
                  to remain — he failed to live and remain
                  at liberty without violating any law by
                  committing the criminal offense of the
                  robbery with a firearm and burglary of a
                  structure while armed.

                  I do need to look at the probation order
                  because I don't — I want to make sure
                  there's no doubt about what the standard
                  conditions are.

                  Standard condition number three: You
                  will not possess, carry, or own any
                  firearm; you will not possess, carry, or
                  own any weapons without consent.

                  I find the defendant guilty. It's a firearm.
                  I'm convinced of it. Even if I'm wrong
                  about that, the evidence in this case has, at
                  the very least, established the following:
                  I'm going to tell you plain, I'm not going

|   |   |
|---|---|
|  | to waste a minute of time trying to decide if this was a robbery or not. |
| [Trial counsel:] | I understand, Judge. |
| [Court:] | I'm just not even going to concern myself with it. We'll leave that up to the jury. But the state has charged — the way they charged the robbery, they throw in the grand theft aspect, they added a dollar amount, meaning that unlike most robbery informations, grand theft is an appropriate lesser offense. |

[Court:] The term theft, it can include — this is from the standard jury instruction — conduct previously known as stealing, larceny, purloining, abstracting, embezzlement, misapplication, misappropriation, conversion, [obtaining] money or property by false pretenses, fraud, deception, or other conduct similar in nature. It's a fraud, it's [a] scam, even by his own testimony.

I find falsely [*sic*] that he has violated probation condition four. He is guilty of that as well.

I will not make any findings as to [the] appropriate sentence till I see what the jury's done in this case.

The trial court sentenced Hernandez to five years for the probation violation and ran the sentence consecutively to the sentences for the robbery and burglary as follows (Doc. 13, Ex. 1 at 74–75):

| [Court:] | The Defendant was placed on probation in case number, CF09-355. I want to make sure what was actually [pled] to Count Two, grand theft — yes. |
|---|---|
| [Trial counsel:] | Yes, sir. |

[Court:]                I am not going to ignore the pathetic amount of time he lasted on probation. I am not going to overlook that. You've got five years on that with credit for time served. As to the offense of armed robbery and burglary with an assault you got 10 years on each consecutive, consecutive to the five years for a total of 25 years. That's it.

The five-year offer could not have referred to an offer in the probation violation case because the underlying conviction in the probation violation case was grand theft, a third-degree felony punishable by five years. (Doc. 13, Ex. 26, Uniform Commitment to Custody of Department of Corrections) § 775.082(3)(e), Fla. Stat. For the violation, the trial court could have "impose[d] any sentence which it might have originally imposed before placing [Hernandez] on probation . . . ." § 948.06(2)(e), Fla. Stat. A five-year offer for a third-degree felony punishable by a maximum of five years amounts to no offer.

The state court record clearly and convincingly rebuts the state court's determination that (1) the prosecutor presented the five-year offer in the probation violation case and (2) trial counsel's representation at sentencing refuted the affidavits supporting Hernandez's claim. 28 U.S.C. § 2254(e)(1). Because no reasonable jurist reviewing these documents would conclude that the record refutes the claim, Hernandez meets his burden and shows that the state court unreasonably determined a material fact. 28 U.S.C. § 2254(d)(2). Therefore, the Court reviews the claim *de novo*. *Cooper*, 646 F.3d at 1353.

Counsel has a duty to timely communicate a formal offer to a defendant. *Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). To show prejudice,

"defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. "Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 566 U.S. at 147. *Accord Carmichael v. United States*, 966 F.3d 1250, 1259 (11th Cir. 2020) ("Where a petitioner raises an ineffective assistance claim asserting that his counsel was deficient in plea discussions, to demonstrate prejudice he must show that, but for the ineffective assistance of counsel, a reasonable probability existed that: (1) the plea offer would have been presented to the court (*i.e.* the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) under the offer's terms, the conviction or sentence, or both, would have been less severe than under the judgment and sentence that were, in fact, imposed.").

"When a habeas petitioner seeks a hearing in federal court, the court must first determine 'whether the prisoner was diligent in his efforts' to develop the facts in state court." *Ledford v. Warden, Ga. Diag. Prison*, 975 F.3d 1145, 1163 (11th Cir. 2020) (citing *Williams*, 529 U.S. at 435). In his second post-conviction motion, Hernandez supported this claim with the two affidavits, asserted good cause for failing to raise the claim in his earlier motion[2], and asked for an evidentiary hearing. (Doc. 13, Ex. 24 at 3, 12) On appeal, Hernandez argued that the trial court erred by denying the claim and asked for an evidentiary hearing. (Doc. 13, Ex. 32 at 19) Both the trial court and the state appellate court

---

[2] The affidavits, signed on November 6, 2012, recounted events on September 12, 2012. (Doc. 13, Ex. 24, Exhibit 1 at 1–2) The post-conviction court denied Hernandez's first motion on July 31, 2012. (Doc. 13, Ex. 18)

denied Hernandez relief. (Doc. 13, Exs. 27 and 29) Because Hernandez requested an evidentiary hearing both in his post-conviction motion and his brief on appeal, Hernandez diligently developed the record in state court. 28 U.S.C. § 2254(e)(2). *Pope v. Sec'y, Dep't Corrs.*, 680 F.3d 1271, 1289 (11th Cir. 2012) ("In general, our precedent says that when a petitioner requested an evidentiary hearing at every appropriate stage in state court and was denied a hearing on the claim entirely, the petitioner has satisfied the diligence requirement for purposes of avoiding Section 2254(e)(2).").

This Court granted Hernandez an evidentiary hearing because he proffered facts that, if true, would entitle him to relief. (Docs. 1 at 13–14 and 16 at 1) *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). *Pope*, 680 F.3d at 1291 ("Once a petitioner has established diligence, a federal court may grant an evidentiary hearing without regard to the strictures of 28 U.S.C. § 2254(e)(2), but only if the petitioner has 'proffer[ed] evidence that, if true, would entitle him to relief.'") (citation omitted).

At the evidentiary hearing, Hernandez introduced into evidence the affidavits by August and Key, trial counsel's letter to the Florida Bar, the notes in the prosecution's file, and the trial and sentencing transcripts. (Docs. 57 and 58 at 7) Also, the witnesses listed below testified. For the reasons that follow, the Court finds that the prosecutor extended a formal five-year offer to trial counsel, trial counsel failed to convey the offer to Hernandez, and Hernandez would have accepted the offer instead of going to trial.

**The Prosecutor's Testimony**

The prosecutor, against whom both Hernandez's mother and Hernandez's friend filed bar complaints (Doc. 13, Ex. 13 at Exhibit F), denied that he extended a plea offer to Hernandez. (Doc. 58 at 16, 20, 52) The prosecutor claimed that he had a policy of not extending a plea offer to a defendant who commits an armed robbery. (Doc. 58 at 16) Also, Hernandez was serving a probationary sentence at the time that he committed the armed robbery and had allowed another individual to use his car garage as a "chop shop." (Doc. 58 at 16) The prosecutor testified that he would not have offered a plea to Hernandez under these circumstances. (Doc. 58 at 16) Of course, the prosecutor extended a plea offer to Slade, Hernandez's co-defendant. (Doc. 57-5 at 223–24) When asked about this exception to his asserted policy, the prosecutor explained that he extended an offer to Hernandez's co-defendant because the co-defendant did not possess a firearm. (Doc. 58 at 27) The prosecutor reviewed the prosecution's file before the evidentiary hearing and saw a note by the intake prosecutor in the file. (Doc. 58 at 21, 30) The note stated (Doc. 13, Ex. 13, Appendix A at 1):

> I elected not to file this as 10/20/Life at this time. The case is solid. But [the] victim may have exaggerated the amount of money taken. Defendant may or may not merit a 10-year mandatory. This leaves room for negotiation.

Notwithstanding, at the evidentiary hearing, the prosecutor contended that he believed that a lengthy prison sentence was appropriate and testified that he did not extend an offer because "[he] didn't have to." (Doc. 58 at 21)

The Court finds the former prosecutor not credible. The prosecutor claimed to have a specific recollection of Hernandez's case. (Doc. 58 at 10–11) However, the prosecutor could not remember whether the trial court released Hernandez on bond, could not

remember if the trial court sentenced Hernandez for the probation violation at the same time as the robbery and burglary, and could not remember whether Hernandez told police that he conspired with the owner of the market to commit insurance fraud. (Doc. 58 at 11, 13, 15) The prosecutor could not remember the case that he tried before Hernandez's case or after Hernandez's case. (Doc. 58 at 21–22) The prosecutor claimed that he did not extend an offer in part because his "prosecutorial philosophy at the time" was that "if you committed an armed robbery then you deserve a lengthy sentence." (Doc. 58 at 16) However, the prosecutor had practiced law for only nine or ten months at the time of Henandez's trial  and Hernandez's case was one of his first robbery cases. (Doc. 58 at 26–27) Before the evidentiary hearing, the prosecutor spent half an hour reviewing the state court file and another thirty or forty minutes with the Respondent's counsel preparing for the hearing. (Doc. 58 at 30) The Court finds that the prosecutor's faulty and favorable recollection of the case derived from this preparation.

**Ashley August's and Judy Hernandez's Testimony**

Ashley August testified that Hernandez is her son's uncle and she has known Hernandez for sixteen or seventeen years. (Doc. 58 at 33) After police arrested Hernandez, August and Hernandez kept in contact and discussed his case. (Doc. 58 at 33–34) Hernandez never mentioned a plea offer to August and explained that his only option was to go to trial. (Doc. 58 at 34, 37) After sentencing, Hernandez's mother learned that the prosecutor had extended an offer, and August and Key went to trial counsel's office to ask about the offer. (Doc. 58 at 35–36, 40) Trial counsel acknowledged the offer but refused to provide an affidavit memorializing his knowledge of the offer. (Doc. 58 at 36) Key became irate, and trial counsel asked them both to leave. (Doc. 58 at 36) After personally observing

35

August testify and carefully listening to her testimony[3], the Court finds that August credibly testified that she never heard Hernandez mention a plea offer after his arrest and that she heard trial counsel acknowledge that the prosecutor extended an offer.

Judy Hernandez, Hernandez's mother, testified that she kept in touch with Hernandez after his arrest, and Hernandez never mentioned a plea offer. (Doc. 58 at 47) Hernandez's mother asked trial counsel several times whether the prosecutor had extended an offer and trial counsel responded, "I'm not taking any offers. I'm going to win this case." (Doc. 58 at 47) At sentencing, Hernandez's mother asked the trial judge why the prosecutor had not extended an offer because she felt that the prosecutor had acted unreasonably. (Doc. 58 at 52–53) After sentencing Hernandez's mother learned from August that the prosecutor had extended an offer. (Doc. 58 at 50) Hernandez's mother believed that August had learned about the offer from trial counsel. (Doc. 58 at 50, 52) After personally observing Hernandez's mother testify and carefully listening to her testimony, the Court finds that Hernandez's mother credibly testified that Hernandez never mentioned a plea offer after his arrest.

**Trial Counsel's Testimony**

At the evidentiary hearing, trial counsel initially denied that the prosecutor extended a "formal offer." (Doc. 58 at 64, 65, 68) He contended that the prosecutor contacted trial counsel the day before a pretrial hearing and asked if Hernandez would consider a five-year offer. (Doc. 58 at 64, 110) Trial counsel claimed that he drove to the jail and spoke with Hernandez who said that he could not accept an offer with prison time. (Doc. 58 at 64, 68,

---

[3] *United States v. Prince*, 883 F.2d 953, 959 n.3 (11th Cir. 1989) (explaining that a factfinder may believe or disbelieve all or any part of a witness's testimony).

111, 116–18) Trial counsel testified that Hernandez was convinced that his defense was strong and he could win at trial. (Doc. 58 at 95–96) Trial counsel claimed that he specifically remembered riding over to the jail with his wife who was upset because they were going to arrive late to an event. (Doc. 58 at 67) Trial counsel never memorialized in writing his discussion with Hernandez about the offer. (Doc. 58 at 64, 68, 106)

Trial counsel acknowledged that procedurally, the prosecutor's office did not extend written offers and instead asked whether a defendant would consider an offer. (Doc. 58 at 64) He later acknowledged: "[I]t was an offer to the extent that if Mr. Hernandez said, 'I'll take that deal,' they would have written it up and it probably would have been accepted . . . ." (Doc. 58 at 110) He clarified that the prosecutor never provided a written plea agreement. (Doc. 58 at 112)

Trial counsel denied telling Hernandez's mother that he was not going to accept an offer because he was going to win at trial. (Doc. 58 at 94) Trial counsel also suggested that, when August came to his office, August knew exactly what trial counsel had discussed with Hernandez concerning the offer. (Doc. 58 at 101) Trial counsel claimed that no one knew about the five-year offer except the prosecutor, trial counsel, Hernandez, and trial counsel's wife. (Doc. 58 at 101)

However, trial counsel was confronted with his representation at sentencing to the trial court, in front of Hernandez's mother, that no plea offers had been extended to the defense. In response, trial counsel conceded that he told the trial judge at sentencing that the prosecutor had not extended an offer to Hernandez. (Doc. 58 at 107–08) He explained that he did not believe that the prosecution's suggestion of an offer was an "official offer." (Doc. 58 at 110–11) Trial counsel was then confronted with his letter to the Florida Bar

37

responding to a bar complaint lodged by Hernandez. In that letter, trial counsel claimed that he had "advise[d] [Hernandez] at the jail and in court, before trial, of the plea offers that had been extended to" him. (Doc. 57-1 at 1) At the evidentiary hearing, trial counsel admitted that in that instance he wrote that the prosecutor had extended an offer and he communicated that offer to Hernandez. (Doc. 58 at 109–10)

The Court finds trial counsel only partly credible. Trial counsel testified that the prosecutor contacted him the day before a pretrial hearing and asked him if Hernandez would consider an offer of five years. (Doc. 58 at 64, 68, 111, 116–18) Trial counsel denied that the prosecutor extended a formal written offer and instead claimed that the prosecutor invited Hernandez to extend an offer. (Doc. 58 at 64, 65, 68) In his response to the bar complaint, however, trial counsel referred to the prosecutor's communication as an "**offer**" **six times**. (Doc. 57-1 at 1) At the hearing, the Respondent's counsel conceded that, if the prosecutor had invited Hernandez to extend an offer, trial counsel had a duty to communicate that invitation to offer. (Doc. 58 at 155) The Court finds that the prosecutor presented trial counsel with a formal offer of five years. *Accord State v. Herrera-Fernandez*, 271 So. 3d 1124, 1126 (Fla. 3d DCA 2019) (Emas, C.J., specially concurring) ("The prosecutor's 'invitation' for a defense 'counteroffer' (in the absence of any pending offer) which included specific terms (75 months' imprisonment) and indicated the prosecutor's willingness to accept that 'counteroffer,' was indeed an 'offer' extended by the State.").

Also, trial counsel testified that he advised Hernandez of the five-year offer at the jail, and Hernandez rejected the offer because he did not want to go to prison. (Doc. 58 at 64, 68, 95–96, 111, 116–18) Hernandez testified and denied that trial counsel ever advised him of an offer. (Doc. 58 at 123–24, 129) Hernandez testified that, if trial counsel had

38

advised him of the five-year offer, he would have accepted the offer. (Doc. 58 at 123–24, 129) For the reasons below, the Court finds Hernandez more credible than trial counsel on this crucial point.

**Hernandez's Testimony**

Hernandez testified that, after his arrest, he admitted to police that he, Slade, and the owner of the market agreed to defraud the insurance company by staging the robbery. (Doc. 58 at 120–21) Hernandez testified that, when he admitted to the insurance scam, he knew that he was going to violate his probation and face time in prison. (Doc. 58 at 121–22) Hernandez denied that trial counsel ever told him about a plea offer. (Doc. 58 at 123–24) He testified that he would have accepted a five-year offer because he was facing two life sentences and prison time for the probation violation. (Doc. 58 at 123, 129) At sentencing, Hernandez heard trial counsel inform the trial judge that the prosecutor had not extended an offer. (Doc. 58 at 128) At that time, Hernandez did not know about the five-year offer. (Doc. 58 at 128)

The Court finds Hernandez's testimony credible. Before Hernandez's arrest, police found a handgun in his shop. (Doc. 57-5 at 191–92) At that time, Hernandez was serving a probationary sentence for a third-degree felony punishable by five years, and Hernandez knew that possessing a firearm and conspiring to defraud an insurance company violated the terms of his probation. (Docs. 13, Ex. 26, Uniform Commitment to Custody of Department of Corrections, and Ex. 58 at 121–22) Without any defense to the probation violation for which Hernandez would almost certainly serve a prison sentence, Hernandez would not have rejected a plea offer that would have globally resolved his probation violation and his other first-degree felony charges which were punishable by life sentences.

(Doc. 13, Ex. 1 at 10–11) This exposure to two life sentences gave Hernandez an enormous incentive to resolve both cases with the five-year offer. The Court finds that Hernandez would not have rejected the five-year offer under these circumstances and, therefore, finds Hernandez fully credible when he testified that trial counsel never conveyed the offer.

In this regard, at sentencing, trial counsel told the trial judge in no uncertain terms, "For the record[,] Judge[,] there were no offers made to my client." (Doc. 57-7 at 11) Also, Hernandez's mother told the trial judge that the prosecutor had not extended any reasonable offer. (Doc. 57-7 at 12) The Court considers these statements as additional evidence that trial counsel never conveyed the plea offer to Hernandez.

* * *

In sum, based on the evidence presented at the hearing, the Court finds that the prosecutor extended a formal five-year offer to trial counsel, trial counsel failed to convey the offer to Hernandez, and Hernandez would have accepted the offer instead of going to trial. Moreover, trial counsel testified that the prosecutor would have agreed to the five years if Hernandez had accepted the offer. (Doc. 58 at 110) At sentencing, the trial judge advised that he does not "involve himself" in, or have any control over, plea negotiations. (Doc. 57-7 at 11) The trial judge never stated that he would not have accepted the parties' agreement. Fla. R. Crim. P. 3.171(d) and 3.172(h). Consequently, Hernandez is entitled to relief. *Frye*, 566 U.S. at 148–49; *Carmichael*, 966 F.3d at 1259. *Accord Green v. Att'y Gen., State of Fla.*, 193 F. Supp. 3d 1274, 1288 (M.D. Fla. 2016) ("Accepting plea agreements allows courts to conserve their resources and dedicate their valuable time to disputed matters. Given the high volume of criminal cases in a large metropolitan area, courts are likely to routinely accept plea agreements with few exceptions.").

Relief on Ground Four is **GRANTED**.

**Ground Two and Ground Nine, Sub-claim B**

In Ground Two, Hernandez asserts that appellate counsel was ineffective for not arguing on direct appeal that fundamental error arose from the trial court's failure to instruct the jury on robbery with a weapon, a necessary lesser included offense. (Doc. 1 at 9–10) In sub-claim B of Ground Nine, Hernandez asserts that trial counsel was ineffective for not requesting the instruction for the necessary lesser included offense. (Doc. 1 at 21–22)

**Ground Two – Ineffective Assistance of Appellate Counsel**

Hernandez contends that the trial court erred by not instructing the jury on robbery with a weapon, a necessary lesser included offense. (Doc. 1 at 9–10) He asserts that the lesser offense was one step removed from his conviction for robbery with a firearm, and appellate counsel was ineffective for not raising the issue on direct appeal as fundamental error. (Doc. 1 at 9–11) The state appellate court denied the claim in an unexplained decision, and the unexplained decision is an adjudication on the merits owed deference under Section 2254(d). (Doc. 13, Ex. 12) Hernandez must show no reasonable basis for the denial of relief. *Richter*, 562 U.S. at 99.

The trial court instructed the jury on the weapon element of robbery as follows (Doc. 13, Ex. 1, Trial Transcripts at 291–92):

<div style="margin-left:3em">

[Court:]          Now, if you were to find the defendant guilty of robbery, you have another finding to make. You would have to then determine beyond a reasonable doubt whether, in the course of committing the robbery, he carried some kind of weapon. . . . If you find the defendant carried a firearm in the course of committing a

</div>

robbery, you should find him guilty of robbery with a firearm. If you find that the defendant carried no firearm or weapon in the course of committing the robbery but still did commit a robbery, you should find him guilty only of robbery.

. . .

The term firearm means any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile in the action of an explosive. . . . A weapon is considered a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm. And a weapon is defined to mean any object that could be used to cause death or inflict serious bodily harm. That's what robbery is.

The information charged Hernandez with robbery with a "firearm, a deadly weapon." (Doc. 13, Ex. 1 at 10) The verdict form asked the jury to find whether the weapon was "a firearm" or "not a firearm" (Doc. 13, Ex. 1 at 56):

Count 1: Robbery with a Firearm

We the jury, find as follows as to the Defendant, (check only one):

\_\_X\_\_ Guilty of ARMED ROBBERY as charged.

We the jury, further find that    \_\_X\_\_ the weapon was a firearm.

\_\_\_\_ the weapon was not a firearm.

\_\_\_\_    Guilty of ROBBERY, a lesser included offense.

. . .

The Florida Standard Jury Instruction (Criminal) 15.1 (2009) for robbery for a weapon provides:

If you find that the defendant carried a weapon that was not a [firearm] [deadly weapon] in the course of committing the robbery, you should find [him] [her] guilty of robbery with a weapon.

A "weapon" is defined to mean any object that could be used to cause death or inflict serious bodily harm.

If a defendant commits a robbery with a firearm or other deadly weapon, the robbery is a first-degree felony punishable by life. § 812.13(2)(a), Fla. Stat. If a defendant commits a robbery with a weapon, the robbery is a first-degree felony punishable by thirty years. §§ 812.13(2)(b) and 775.082(3)(b)(1), Fla. Stat. Neither the jury instructions nor the verdict form permitted the jury to find Hernandez guilty of robbery with a weapon. Robbery with a weapon is a necessary lesser included offense of robbery with a firearm. *Reddick v. State*, 394 So. 2d 417, 417–18 (Fla. 1981).

Because trial counsel did not request the instruction for robbery with a weapon (Doc. 13, Ex. 1, Trial Transcripts at 247–52, 281–88), appellate counsel was ineffective only if fundamental error arose from the absence of the instruction. *Pinkney*, 876 F.3d at 1296–97. By denying the claim in an unexplained decision, the state court implicitly concluded that absence of the instruction was not fundamental error. *Pinkney*, 876 F.3d at 1296–97. Fundamental error is an issue of state law, and a state court's determination of state law receives deference in federal court. *Pinkney*, 876 F.3d at 1299 (citations omitted) ("[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is. As the Supreme Court and this Court have repeatedly acknowledged, it is not a federal court's role to examine the propriety of a state court's determination of state law.").

Mandate on Hernandez's direct appeal issued on December 1, 2010. (Doc. 13, Ex. 8) Because at that time *Jones v. State*, 484 So. 2d 577, 579 (Fla. 1986), held that no

fundamental error arises from the trial court's failure to give an instruction on a necessary lesser included offense in a noncapital case, the state appellate court did not unreasonably deny the claim. *See also Saunders v. Dugger*, 579 So. 2d 397, 398 (Fla. 3d DCA 1991); *Mustelier v. Dugger*, 579 So. 2d 353, 354 (Fla. 3d DCA 1991).

*Walton v. State*, 208 So. 3d 60, 65 (Fla. 2016), subsequently held: "If giving an incorrect instruction on a necessarily lesser included offense constitutes fundamental error, then *a fortiori* giving no instruction at all likewise constitutes fundamental error." The state supreme court recognized that *Walton* receded from earlier opinions which held that no fundamental error arises from the trial court's failure to give an instruction on a necessary lesser included offense. *Roberts v. State*, 168 So. 3d 252, 254–56 (Fla. 1st DCA 2015), *quashed by* 242 So. 3d 296, 299 (Fla. 2018).

Appellate counsel's performance is evaluated from his perspective at the time of representation and without the benefit of hindsight. *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). "No holding of the Supreme Court clearly establishes that in order to perform within the 'wide range of reasonable professional assistance,' counsel must accurately predict how the law will turn out or hedge every bet in the hope of a favorable development." *Rambaran v. Sec'y, Dep't Corrs.*, 821 F.3d 1325, 1334 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689).

If trial counsel had asserted fundamental error on direct appeal based on the absence of the necessary lesser included instruction, the state appellate court would likely have

denied relief. Because "an attorney will not be held to have performed deficiently for failing to perform a futile act," appellate counsel was not ineffective, and Hernandez fails to show no reasonable basis for the state court's denial of relief. *Pinkney*, 876 F.3d at 1297.

Ground Two is **DENIED**.

**Ground Nine, Sub-claim B**

Hernandez asserts that trial counsel was ineffective for not requesting a jury instruction for robbery with a weapon. (Doc. 1 at 21–22) The post-conviction court denied the claim as follows (Doc. 13, Ex. 14 at 4) (state court record citations omitted):

> Defendant [ ] argues that the Court failed to read the category one lesser included offenses of robbery with a firearm. The record refutes the Defendant's claim.

The state court unreasonably concluded that the record refutes the claim. 28 U.S.C. § 2254(d)(2). Robbery with a weapon is a necessary lesser included offense of robbery with a firearm. *Reddick*, 394 So. 2d at 417–18. The Florida Standard Jury Instruction (Criminal) 15.1 (2009) for robbery for a weapon provides:

> If you find that the defendant carried a weapon that was not a [firearm] [deadly weapon] in the course of committing the robbery, you should find [him] [her] guilty of robbery with a weapon.
>
> A "weapon" is defined to mean any object that could be used to cause death or inflict serious bodily harm.

The trial court did not instruct the jury on robbery with a weapon. The trial court instructed the jury on only robbery with a firearm and robbery without a firearm or weapon. (Doc. 13, Ex. 1, Trial Transcripts at 290–93) The trial transcripts clearly and convincingly rebut the state court's finding. 28 U.S.C. § 2254(e)(1).

The Court reviews the claim *de novo*, *Cooper*, 646 F.3d at 1353, but still concludes that Hernandez fails to demonstrate prejudice. Like Hernandez's case, in *Sanders v. State*, 946 So. 2d 953, 955 (Fla. 2006), a jury found the defendants guilty of robbery with a firearm, and the trial court failed to instruct the jury on robbery with a weapon, the necessary lesser included offense. The defendants asserted that trial counsel was ineffective for not requesting the instruction for the lesser offense. *Sanders*, 946 So. 2d at 955. The Florida Supreme Court concluded that the defendants failed to demonstrate prejudice under *Strickland*. *Sanders*, 946 So. 2d at 959–60,

*Sanders*, 946 So. 2d at 957 (quoting *Strickland*, 466 U.S. at 695), explained that, under *Strickland*, a court "'should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.'" In a Florida court, the trial judge "instructs the jury that its 'verdict must be *based solely on the evidence, or lack of evidence, and the law*.'" *Sanders*, 946 So. 2d at 958 (quoting Fla. Std. Jury Instr. (Crim.) 2.1) (italics in original). "Although the jury also is instructed about lesser-included offenses, the instruction specifically allows the jury to consider a lesser-included offense *only* if it 'decide[s] that the main accusation has not been proved beyond a reasonable doubt.'" *Sanders*, 946 So. 2d at 958 (quoting Fla. Std. Jury Instr. (Crim.) 3.4) (italics in original).

Relying on the presumption of an impartial decisionmaker under *Strickland* and the above jury instructions, *Sanders*, 946 So. 2d at 958–59 (citations omitted and italics in original), concluded that the defendants could not demonstrate prejudice under *Strickland*:

> As shown above, the jury must anchor its verdict in, and only in, the applicable law and the evidence presented. Nothing else may influence its decision. When a jury convicts a defendant of a criminal offense, it has decided that the evidence

demonstrated beyond a reasonable doubt that the defendant
committed the crime charged. To assume that, given the choice,
the jury would now *acquit* the defendant of the same crime of
which it convicted him, and instead convict of a lesser offense,
is to assume that the jury would disregard its oath and the trial
court's instructions.

. . .

As stated above, to prove that counsel's deficient performance
prejudiced the defense, a defendant must show "a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." *Strickland*,
466 U.S. at 694. "A reasonable probability is a probability
sufficient to undermine confidence in the outcome." *Id.*
However, any finding of prejudice resulting from defense
counsel's failure to request an instruction on lesser-included
offenses necessarily would be based on a faulty premise: that a
reasonable probability exists that, if given the choice, a jury
would violate its oath, disregard the law, and ignore the trial
court's instructions. As did the district court in *Sanders*, we, too,

> have difficulty accepting the proposition that
> there is even a substantial possibility that a jury
> which has found every element of an offense
> proved beyond a reasonable doubt, would have,
> given the opportunity, ignored its own findings of
> fact and the trial court's instruction on the law
> and found a defendant guilty of only a lesser
> included offense.

847 So. 2d at 507 (quoting *Hill*, 788 So. 2d at 319). As the Court
warned in *Strickland*, a defendant has no entitlement to an
aberrant jury — "the luck of a lawless decisionmaker." 466 U.S.
at 695. Thus, the defendants do not raise any issue that would
undermine our confidence in their convictions. That is, they
assert no error — either by their defense counsel or by the judge
at trial — that calls into question the jury's determination that
they were guilty, beyond a reasonable doubt, of the crimes
charged. The possibility of a jury pardon cannot form the basis
for a finding of prejudice.

The Eleventh Circuit has applied the prejudice analysis in *Sanders* to affirm an order

denying a claim that trial counsel was ineffective for not requesting an instruction for a lesser

included offense. *Crapser v. Sec'y, Dep't Corrs.*, 855 F. App'x 626, 627–29 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1155 (2022); *Santiago v. Sec'y, Fla. Dep't Corrs.*, 472 F. App'x 888, 888–89 (11th Cir. 2012).

At Hernandez's trial, the trial judge instructed the jury: (1) "[Y]ou must follow the law as I've set [ ] out in these instructions," (2) "The case must be decided only upon the evidence that you have heard from the answers of the witnesses and have seen in the form of exhibits in evidence and these instructions," and (3) "If you did return a verdict of guilty, it should be **for the highest offense that was proved beyond a reasonable doubt**." (Doc. 13, Ex. 1, Trial Transcripts at 303–05) (bolding added) The jury found Hernandez guilty of robbery with a firearm. (Doc. 13, Ex. 1 at 56) Because the jury is presumed to have followed the trial court's instructions and found that the prosecutor proved every element of robbery with a firearm beyond a reasonable doubt, Hernandez could not demonstrate prejudice under *Strickland. Sanders*, 946 So. 2d at 958–59.

Ground Nine, Sub-claim B is **DENIED**.

**Ground Three**

Hernandez asserts that trial counsel was ineffective for not communicating the prosecutor's willingness to extend a ten-year plea offer. (Doc. 1 at 12–13)

The Respondent asserts that the claim is unexhausted and procedurally barred. (Doc. 11 at 19–20) The Respondent contends that, in his post-conviction motion, Hernandez alleged that the prosecutor was willing to negotiate a plea, and "a 10-year prison sentence was a common plea offer at that time, and that he would have negotiated a sentence of 10 years or less." (Doc. 11 at 19) The Respondent contends that, on federal habeas, Hernandez expands the claim by alleging that "the State was willing to accept a plea 'in the range of 10

years['] prison or less." (Doc. 11 at 19) Because "'[a] reasonable reader would understand [the] claim's particular legal basis and specific factual foundation' to be the same as it was presented in state court," the ground is exhausted. *Pope v. Sec'y, Dep't Corrs.*, 680 F.3d 1271, 1286 (11th Cir. 2012) (quoting *Kelley v. Sec'y, Dep't Corrs.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004)). *Accord Brown v. Estelle*, 701 F.2d 494, 495–96 (5th Cir. 1983) ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court.").

The post-conviction court denied the claim as follows (Doc. 13, Ex. 14 at 2) (state court record citations omitted):

> . . . Defendant argues that trial counsel was ineffective for failing to advise the Defendant that the State was willing to negotiate a plea deal. Defendant learned of the State's willingness from the State Attorney's own file which he received post-trial pursuant to a public records request. It is highly unlikely that trial counsel actually knew that the State was willing to negotiate as the State Attorney's notes would be work product and unavailable during trial. In fact, trial counsel told the Court that no offers had been made in the case. Based on the above, the Court finds that trial counsel was not deficient and as no offers were made, Defendant cannot establish prejudice.

At sentencing, trial counsel advised, "For the record Judge there were no offers made to my Client." (Doc. 13, Ex. 1 at 74) The prosecutor neither corrected nor objected to that statement. Also, the note in the prosecution's file, attached to Hernandez's post-conviction motion, did not support the claim. In the note, the prosecutor, who determined the appropriate charges for the case, explained that the case was not charged with a mandatory minimum term for a firearm enhancement under Section 775.087(2), Florida Statutes, that the case may not merit a mandatory minimum term for a firearm

enhancement, and that the lack of a mandatory minimum term for a firearm enhancement "leaves room for negotiation" (Doc. 13, Ex. 13, Appendix A at 1):

> I elected not to file this as 10/20/Life at this time. The case is solid. But [the] victim may have exaggerated the amount of money taken. Defendant may or may not merit a 10-year mandatory. This leaves room for negotiation.

The reference to "room for negotiation" at most showed a willingness to negotiate. Because trial counsel has a duty to communicate only formal offers and the record refuted that the prosecutor had extended a formal offer, on the record the before it, the state court did not unreasonably deny the claim. *Frye*, 566 U.S. at 145 ("[A]s a general rule, defense counsel has the duty to communicate **formal offers** from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.") (bolding added); *Turbi v. Sec'y, Dep't Corrs.*, 800 F. App'x 773, 775 (11th Cir. 2020) ("Because the record indicates, at most, that the state had contemplated giving a plea offer to Turbi, but never formally extended it to him, the state court's determination that the prosecuting attorney did not extend a plea deal to Turbi's defense counsel was a reasonable one.").

Hernandez raised a similar claim in Ground Four, and the Court grants relief on Ground Four. However, Hernandez raised the claim in Ground Four in his second post-conviction motion and supported the claim with the affidavits by August and Keys who swore that trial counsel told them about the plea offer. The two affidavits demonstrated that the state court unreasonably denied the claim as refuted by the record. Hernandez raised the claim in this ground in his first post-conviction motion and did not attach those affidavits. Those affidavits recounted events on September 12, 2012 (Doc. 13, Ex. 24, Exhibit 1 at 1–2), which occurred after the post-conviction court denied the claim in the first motion. (Doc. 13, Ex. 18)

50

Because the post-conviction court denied the claim raised in Ground Three on the merits, this Court's review is limited to the record before the post-conviction court when the court adjudicated the claim. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). When the post-conviction court denied the claim in this ground, the record did not contain the affidavits. Because, at that time, the record available to the post-conviction court refuted the claim, the state court did not unreasonably deny the claim.

Ground Three is **DENIED**.

**Ground Five**

Hernandez asserts that trial counsel was ineffective for not communicating a five-year plea offer. (Doc. 1 at 15–16) He filed a complaint with the Florida Bar about trial counsel's failure to inform him of the plea (Doc. 1 at 15), and trial counsel responded, confirmed that the prosecutor extended an offer, and claimed that he conveyed the offer to Hernandez who rejected it. (Doc. 16-3 at 3) Hernandez asserts that trial counsel's letter to the Florida Bar substantiates an offer and contradicts trial counsel's representation at sentencing that the prosecutor did not extend an offer. (Doc. 1 at 15–16)

The post-conviction court denied the claim as follows (Doc. 13, Ex. 32 at 1) (bolding in original omitted) (state court record citations omitted):

> In his Motion, Defendant claims that trial counsel was ineffective for failing to convey a plea offer. Defendant has previously raised this claim. It was denied in an Order dated January 3, 2013. The Second DCA *per curiam* affirmed the Court's order and issued a Mandate on December 30, 2013. Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion is DENIED as successive.

The Respondent asserts that the ground is procedurally barred. (Docs. 11 at 23–25 and 23 at 3) The state court's denial of the claim based on an independent and adequate state procedural rule bars federal review. Fla. R. Crim. P. 3.850(h). *Mincey v. Head*, 206 F.3d 1106, 1135–36 (11th Cir. 2000). *Kimbrough v. Sec'y, Fla. Dep't Corrs.*, 809 F. App'x 684, 692 (11th Cir. 2020) ("The postconviction court's denial of Kimbrough's successive Rule 3.850 motion was based on the procedural requirements of Rule 3.850, which is an independent and adequate state procedural ground.").

Hernandez must show either cause and actual prejudice or a miscarriage of justice to excuse the procedural bar. *Mincey*, 206 F.3d at 1136. In his reply, Hernandez contends that he first learned about the offer on September 18, 2012, when trial counsel told August and Key about the offer. (Doc. 16 at 1) On September 19, 2013, he received trial counsel's letter to the Florida Bar, which confirmed that the prosecutor had extended an offer. (Doc. 16 at 1) On January 9, 2014, he filed his third post-conviction motion raising the claim based on trial counsel's letter to the Florida Bar. (Doc. 13, Ex. 31) He asserts that he could not have raised the claim in his two earlier post-conviction motions because trial counsel had not submitted the letter to the Florida Bar. (Doc. 16 at 2)

A showing that the factual basis of a claim was not reasonably available may serve as cause to excuse a procedural default. *Amadeo v. Zant*, 486 U.S. 214, 222 (1988) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). However, "[t]hat [a petitioner] did not possess, or could not reasonably have obtained, certain evidence fails to establish cause if other known or discoverable evidence could have supported the claim in any event." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991), *superseded on other grounds by Banister v. Davis*, 140 S. Ct. 1698, 1707 (2020).

Hernandez fails to establish cause because he knew the factual basis of his claim, even before trial counsel sent the letter to the Florida Bar. A year before, trial counsel told August and Key about the offer. Just after, August and Key signed affidavits memorializing trial counsel's knowledge of the offer. (Doc. 13, Ex. 24, Exhibit 1) In the affidavits, August and Key swore that trial counsel told them that the prosecutor had extended a five-year offer. (Doc. 13, Ex. 24, Exhibit 1 at 1–2) Hernandez raised a claim based on the affidavits in his second post-conviction motion. (Doc. 13, Ex. 24)

In the letter to the Florida Bar, trial counsel reiterated that the prosecutor extended a plea offer. (Doc. 13, Ex. 31, Exhibit B at 1) After receiving the letter, Hernandez raised the same claim based on the same operative facts in his third post-conviction motion. (Doc. 13, Ex. 24) Because trial counsel's letter to the Florida Bar only strengthened the claim but presented no new material facts in support of the claim, Hernandez fails to demonstrate cause to excuse the procedural bar, and the claim is barred from federal review. *McCleskey*, 499 U.S. at 498 ("Omission of the claim will not be excused merely because **evidence discovered later might also have supported or strengthened the claim**.") (bolding added); *Alderman v. Zant*, 22 F.3d 1541, 1552 (11th Cir. 1994) ("The record reflects that Appellant was both aware of the facts he contends support a potential *Brady/Giglio* violation several years before 1987 and that Appellant did nothing to supplement the evidence to support the claim. That Appellant did not possess Zipperer's affidavit fails to establish cause if known or discoverable evidence could have supported the claim.").

Hernandez raised a similar claim in Ground Four, and the Court grants relief on Ground Four. However, Hernandez raised the claim in Ground Four in his second post-conviction motion, and the state court denied the claim on the merits. He raised the claim

in this ground in his third post-conviction motion, and the state court relied on an independent and adequate state procedural rule to deny the claim. Consequently, while this the Court may reach the merits of the claim in Ground Four and grant relief, the Court cannot reach the merits of the claim in this ground. *Mincey*, 206 F.3d at 1135 ("It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'").

Ground Five is **DENIED**.

**Ground Six**

Hernandez asserts that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing to the defense an exculpatory portion of the surveillance video of the crimes. (Doc. 1 at 16–17) The undisclosed portion of the video allegedly shows another employee enter the market after the crimes, leave with a bag, and place the bag in Slade's car. (Doc. 1 at 17) The owner of the market was present and observed the employee leave with the bag. (Doc. 1 at 17) Hernandez contends that the undisclosed portion of the video proves that he, the store owner, and Slade staged the crimes to defraud the insurance company. (Doc. 1 at 17) For the reasons that follow, the Court **DENIES** this claim.

The post-conviction court denied the claim as follows (Doc. 13, Ex. 18 at 2):

> In its Response, the State argues that Defendant's [claim] should be denied as Defendant has failed to demonstrate that the alleged missing video portion is exculpatory and that it was not turned over to defense counsel during discovery. . . . After review of the State's arguments, citations, and attachments to its Response, adopted and incorporated herein, the Court agrees.

The post-conviction court adopted the following argument in the prosecutor's response (Doc. 13, Ex. 17 at 3–7) (state court record citations omitted):

> . . . [Defendant] opines that a portion of the surveillance video was "suppressed." Defendant claims that a portion of the surveillance video shows an employee leaving the store with a bag immediately prior to the robbery, and he speculates that the jurors could have inferred that the victim had his employee remove money from the store prior to the robbery. He claims that the State edited or deleted footage. Defendant admits being unaware of whether this footage was disclosed in discovery to Trial Counsel, claiming that evidentiary testing is necessary to determine whether counsel had the video and agreed to a redacted video being played.
>
> Defendant's amended claim is in all respects identical to the claim raised in his initial motion for postconviction relief. The Court's original order dismissing this claim observes that the State may have provided the entire video in discovery. The Court observed that Defendant had failed to indicate how the video is exculpatory in nature.
>
> Defendant's explanation for the exculpatory nature of the video in his Amended Motion is that according to Defendant, it supports his claim that the robbery was staged. This, because an unknown employee of the victim was seen running into and then from the store with a bag. Defendant thinks that the jury could potentially infer that the victim sent this employee to retrieve money. This claim is speculative at best. Additionally, Defendant advanced this as his explanation for [the] exculpatory nature in his First Motion at 9, while explaining why he thought the violation, if violation there was, concerned material evidence. Defendant has added nothing new, and his motion remains facially invalid.
>
> Assuming *arguendo* the truth of Defendant's claims (the State does not concede this), the Defendant also has not shown that portions of the video were withheld from Trial Counsel. Rather, Defendant asks the Court to speculate that this is so, and to conduct a fishing expedition to determine whether he's guessed right.
>
> Collateral practice is not the place for guesswork and speculation. The Defendant's burden of proof in collateral motions is not inconsequential; rather, he carries a weighty

burden. *Gore v. State*, 32 Fla. L. Weekly S438, S441 (Fla. Jul. 5, 2007). Because his burden of proof is high, a collateral defendant must come forward with actual evidence and not mere conclusory allegations to support his claims for relief. *See id.*; *see also LeCroy v. Dugger*, 727 So. 2d 236, 241 (Fla. 1998); *Thomas v. State*, 206 So. 2d 475, 476 (Fla. 2d DCA 1968); *Dancy v. State*, 175 So. 2d 208, 209 (Fla. 3d DCA 1965). A Motion for Postconviction Relief may be summarily denied if it fails to describe how the alleged act or omission actually prejudiced the defense. *See LeCroy*, 727 So. 2d at 241.

Here, Defendant has failed to demonstrate that the alleged video portion is at all exculpatory to him, or that the State suppressed any evidence. Rather, if his claims are taken in the light most favorable to him, all he has demonstrated is that a portion of the video was played to the jury. As the Court observed in its First Order at 2, this is allowed. Since the Defendant has failed to demonstrate each component of *Brady*, his motion is once again facially insufficient, and should be denied without further leave to amend. "Once the defendant has been given the opportunity to amend a facially insufficient claim, the final order on the motion is a disposition on the merits of all claims, even if the defendant's attempt to amend the claim results in another insufficiently pleaded ground for relief." *Verity*, 56 So. 3d at 78.

The state court's denial of the claim for facial insufficiency is an adjudication on the merits owed deference under Section 2254(d). *Boyd v. Comm., Ala. Dep't Corrs.*, 697 F.3d 1320, 1331 (11th Cir. 2012). In his post-conviction motion, Hernandez alleged the following in support of his claim (Doc. 13, Ex. 15 at 1–3) (state court record citations omitted):

### <u>Amended Ground Three</u>
*Brady* violation when State inadvertently suppressed end of surveillance video

**The Favorable Evidence**

The deleted footage of the surveillance video immediately after the defendant left the store.

**Part One of *Brady* Violation**

This favorable evidence was exculpatory because it assists the defense that the incident was staged with Mr. Patel and Mr. Slade for insurance fraud and not an actual robbery. When the defendant was arrested he stated that he, Mr. Slade[,] and Mr. Patel staged the robbery for insurance fraud. When Mr. Slade was arrested, he also stated that the robbery was staged. This suppressed part of the surveillance video shows another employee of Mr. Patel running back into the store and then running into the storage/office area in the rear of the store immediately after the alleged robbery. This employee reemerges on the video carrying a bag, in which he is attempting to conceal from view of the camera as he runs back outside of the store at Mr. Patel.

Therefore, the jury could infer that Mr. Patel had his employee run back inside the store and grab the money hidden in the bag that was alleged to be taken from the robbery so the police would not find it if they searched. As a result, the jury could have exonerated the defendant if they used this inference to support the defendant's defense, in the same manner that inferences were used to find the defendant guilty of actual robbery and burglary. This part of the video could have exonerated the defendant if the jury did not believe Mr. Patel's explanations as to why his employee ran back inside of the store and grabbed a bag which he was attempting to conceal from the camera and then run out with toward Mr. Patel, and as to what was inside of the bag.

**Part Two of *Brady* Violation**

This part of the surveillance video was willfully or inadvertently suppressed by the state when the state obtained the original video from the Polk County Sheriff's Office. The state then had the entire video altered by drastically slowing it down and by editing/deleting the footage immediately after the defendant exited the store. The video that was displayed to the jury was not in its original state and this exculpatory part was suppressed. The state retained an original copy and a copy of the altered version, and then returned the original video back to the Sheriff's Office.

After trial, the defendant's family obtained the video from the Sheriff's Office and a video from the State Attorney's Office. It was then discovered that the two videos were not the same length in time and one of the videos had this previously deleted exculpatory portion that was unknown by the defendant,

counsel, and the Court at the time of trial. Due to the video having been slowed down, thus, altering the video from its original state, establishes this exculpatory evidence was inadvertently or intentionally suppressed by the state.

**Part Three of *Brady* Violation**

This deleted part of the video was material. It tended to prove by inference, the material fact at issue, that Mr. Patel was involved in the staged robbery. This evidence also supported the defendant's defense to the charges. Because the ultimate issue at trial was Mr. Patel's credibility and his involvement, this evidence casts [ ] a new light in favor of the defendant's defense and would have affected the judgment of the jury if they had seen Mr. Patel's second employee running back into the store after the robbery and then attempting to conceal a bag while running out the store toward Mr. Patel immediately after the incident.

The defendant was prejudiced because there is a reasonable probability that if the jury had seen this deleted part of the video, their confidence that the incident was an actual robbery would have been undermined and the defendant probably would have been found guilty of a lesser offense of grand theft, scheme to defraud, or not guilty had the jury seen this deleted part of the surveillance video.

This issue may necessarily require an evidentiary hearing to determine if counsel obtained both copies of the video and agreed to have this portion of the video not played to the jury. If so, then counsel would have been ineffective and the defendant prejudiced by the reasons above.

For a *Brady* violation, a defendant must allege: "(1) that the evidence was favorable to the defendant, either because it is exculpatory or impeaching; (2) that the prosecution suppressed the evidence, either willfully or inadvertently; and (3) that the suppression of the evidence resulted in prejudice to the defendant." *Rimmer v. Sec'y, Fla. Dep't Corrs.*, 876 F.3d 1039, 1054 (11th Cir. 2017). To establish prejudice, the defendant must show that the suppressed evidence was material, or "there is a reasonable probability that, had the

suppressed evidence been disclosed, the result of the proceeding would have been different." *Rimmer*, 876 F.3d at 1054.

Because Hernandez adequately alleged a *Brady* claim and the record before the state court did not conclusively refute the claim, the state court unreasonably determined that Hernandez "failed to demonstrate that . . . that the State suppressed any evidence." (Doc. 13, Ex. 17 at 6) 28 U.S.C. § 2254(d)(2). *Edwards v. State*, 985 So. 2d 698, 699–700 (Fla. 1st DCA 2008). In his motion, Hernandez alleged that his family obtained the surveillance video from the sheriff's office and the surveillance video from the prosecutor's file. (Doc. 13, Ex. 15 at 3) Hernandez alleged: "It was then discovered that the two videos were not the same length in time and one of the videos had this previously deleted exculpatory portion that was unknown by the defendant, counsel, and the Court at the time of trial." (Doc. 13, Ex. 15 at 3) Hernandez's allegation that the prosecutor suppressed the video is not based on a "fishing expedition" but rather on his own investigation and comparison of the video from the sheriff's office with the video from the prosecutor's file. Only after learning that the sheriff's office possessed the entire video and the prosecutor possessed an edited video, Hernandez reasonably and logically concluded that the prosecutor had disclosed to the defense only the edited video. (Doc. 13, Ex. 17 at 2–3) *Accord Stephens v. Hall*, 407 F.3d 1195, 1203 (11th Cir. 2005) ("The *Brady* rule applies to evidence possessed by the prosecution team, which includes both the investigators and prosecutors.").

Also, on the limited record before it, the state court unreasonably determined that Hernandez "failed to demonstrate that the alleged video portion is at all exculpatory to him." (Doc. 13, Ex. 17 at 6) 28 U.S.C. § 2254(d)(1), (2). Hernandez did not speculate what the missing part of the video might show. He reviewed the video from the sheriff's office

59

and described with specificity what the missing part of the video actually showed. (Doc. 13, Ex. 17 at 4–5) *Wright v. Sec'y, Fla. Dep't Corrs.*, 761 F.3d 1256, 1281 (11th Cir. 2014) ("[A] *Brady* claim fails when it is only speculative that the materials at issue would have led to exculpatory information.").

Hernandez's defense at trial was that he did not commit a burglary and robbery but instead conspired with Slade and the store owner to stage the crimes to defraud the insurance company. Hernandez alleged that the missing part of the video showed: "[A]nother employee of Mr. Patel running back into the store and then running into the storage/office area in the rear of the store immediately after the alleged robbery. This employee reemerges on the video carrying a bag, which he is attempting to conceal from view of the camera as he runs back outside of the store at Mr. Patel." (Doc. 13, Ex. 15 at 2) A reasonable juror could conclude that the employee entered the crime scene at the direction of the store owner and the bag contained money that the store owner intended to report as a loss to the insurance company. Hernandez sufficiently alleged that the missing part of the video was exculpatory because he explained how the video was favorable to his defense. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.").

Hernandez's concession that testimony by trial counsel at an evidentiary hearing could defeat his claim did not render the claim facially insufficient. Accepting the allegations in the motion as true, Hernandez adequately alleged a *Brady* claim and the state court should have granted Hernandez an evidentiary hearing. *Rimmer*, 876 F.3d at 1054.

The possibility that testimony or other evidence at the hearing may disprove the claim (a possibility with any sufficiently alleged post-conviction claim) did not render the claim either speculative or facially deficient. *Accord Schriro*, 550 U.S. at 474. Hernandez's post-conviction motion clearly and convincingly rebuts the state court's determination that the claim was not adequately alleged. 28 U.S.C. § 2254(e)(1).

Because the state court unreasonably determined facts under Section 2254(d), this Court reviews the claim *de novo*. *McGahee*, 560 F.3d at 1266. Hernandez requested an evidentiary hearing in both his state post-conviction motion and his brief on appeal, (Doc. 13, Ex. 15 at 3, 13 and Ex. 19 at 14), and therefore was "diligent in his efforts" to develop facts in state court. *Ledford*, 975 F.3d at 1163. This Court granted Hernandez an evidentiary hearing because he proffered facts which, if true, would entitle him to relief. (Docs. 1 at 16–17 and 16 at 1) *Schriro*, 550 U.S. at 474.

Now with a full record, including the evidence in the record and at the evidentiary hearing, the Court finds that Hernandez's claim fails. At the evidentiary hearing, the Respondent introduced into evidence three compact discs. Each contains three surveillance videos and ten photographs. (Doc. 56) Hernandez's counsel stipulated to the admission of the discs at the hearing. (Doc. 58 at 7–8) One disc contains a copy of the surveillance video admitted into evidence at trial. (Doc. 56 at 1) The second disc contains a copy of the surveillance video from the sheriff's office. (Doc. 56 at 1) The third disc is a duplicate of the second disc that trial counsel reviewed before the evidentiary hearing. (Doc. 56 at 1)

At the evidentiary hearing, the Court compared the compact disc from the sheriff's office with the compact disc introduced into evidence at trial. (Doc. 56, Exs. 1 and 2) Both discs contain the same photographs and videos. (Doc. 56, Exs. 1 and 2) Both discs contain

thirteen identical computer files: (1) ten files containing photographs created from the surveillance video; and (2) three files containing surveillance video of the crimes. (Doc. 56, Exs. 1 and 2) At the evidentiary hearing, Hernandez's counsel conceded: "The exhibits that I had been shown do appear to all be the same and consistent with the same files on them." (Doc. 58 at 149–50)

The disc with a copy of the video introduced into evidence at Hernandez's trial contains the part of the video that Hernandez contends the prosecution suppressed. (Doc. 56, Ex. 1) At 10 minutes and 55 seconds, the video from the file titled "File20090329204753" shows a masked individual enter the market with a gun and take money. (Doc. 56, Ex. 1) At 15 minutes and 30 seconds, a male wearing a black apron enters the market with the owner just behind him, quickly goes to the back of the store, and shortly after leaves with a bag partly concealed from the view of the camera. (Doc. 56, Ex. 1) The male with the black apron places the bag into a car parked outside. (Doc. 56, Ex. 1) The owner stands in front of the market talking on the telephone and watches the male with the black apron place the bag in the car. (Doc. 56, Ex. 1) At 19 minutes and 19 seconds, a police officer arrives. (Doc. 56, Ex. 1)

Thus, because the compact disc admitted into evidence at Hernandez's trial contains the exculpatory part of the video, Hernandez fails to prove that the prosecutor violated *Brady* by suppressing that part of the video. (Doc. 56, Ex. 1) *Grayson v. King*, 460 F.3d 1328, 1337 (11th Cir. 2006) ("*Brady* concerned the suppression of evidence prior to and during trial that was material to the proceedings and denied the defendant a fair trial. Here, Grayson makes no argument that the biological evidence was suppressed at trial, denying him a fair trial; rather, it was presented at trial, and it is beyond peradventure that Grayson received a fair

trial."). *Accord United States v. Agurs*, 427 U.S. 97, 103 (1976) ("The rule of *Brady v. Maryland*, 373 U.S. 83 (1963), arguably applies in three quite different situations. Each involves the discovery, after trial of information which had been known to the prosecution but unknown to the defense."); *Gray v. Netherland*, 518 U.S. 152, 168 (1996) ("' . . . [t]here is no general constitutional right to discovery in a criminal case, and *Brady*,' which addressed only exculpatory evidence, 'did not create one.'") (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).

Also, the Respondent supplemented the record with a discovery exhibit that the prosecutor served on the defense before trial. (Doc. 34-1) In the exhibit, the prosecutor notified the defense that relevant "video recording(s)" and "video(s) tape(s)" existed and advised: "Note: Defense counsel may copy, listen to, and/or view audio/video tape recordings at the originating law enforcement agency." (Doc. 34-1 at 6) Because the video from the sheriff's office contains the exculpatory part of the video as well, and the defense could have obtained the video from the sheriff's office, Hernandez fails to prove that the prosecution suppressed the video. *Parker v. Allen*, 565 F.3d 1258, 1277 (11th Cir. 2009) ("[T]here is no suppression if the defendant knew of the information or had equal access to obtaining it."); *Maharaj*, 432 F.3d at 1315 ("Our case law is clear that '[w]here defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged *Brady* material, there is no suppression by the government.'"). *Accord United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002) ("The Government is not required, in other words, to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own.'") (citation omitted).

Ground Six is **DENIED**.

**Ground Seven**

Hernandez asserts that the prosecutor violated *Giglio v. United States*, 405 U.S. 150 (1972). (Doc. 1 at 17–18) He contends that the store owner falsely testified on behalf of the prosecution when he identified a silver revolver as the gun used in the crimes and the detective also falsely testified that the store owner identified the silver revolver. (Doc. 1 at 17–18) ("sub-claim A") He further contends that the prosecutor falsely told the jury during closing argument: "As tight as insurance companies are, they decided that there's no fraudulent activity here." (Doc. 1 at 18) ("sub-claim B")

**Sub-claim A**

Hernandez asserts that the prosecutor presented false testimony by the store owner about the gun ("sub-claim A — Store Owner") and presented false testimony by the detective about the store owner's identification of the gun ("sub-claim A — Detective"). (Doc. 1 at 17–18)

**Sub-claim A — Store Owner**

The post-conviction court denied the *Giglio* claim based on the store owner's testimony as follows (Doc. 13, Ex. 14 at 2–3) (state court record citations omitted):

> . . . Defendant argues that the State committed a *Giglio* violation. Defendant first argues that the State did not correct [the store owner] when he testified that he recognized the gun. [The store owner] did testify that he recognized the gun but then stated, during *voir dire*, that he could not be one hundred percent sure. Defendant has not proven that the State presented false testimony.

The store owner testified that the robber pointed a gun at him. (Doc. 13, Ex. 1, Trial Transcripts at 114) The prosecutor showed the owner a gun and asked him if he recognized it. (*Id.* at 115) The owner identified the gun as the same gun that the robber pointed at him. (*Id.* at 115–16)

In front of the jury, trial counsel conducted *voir dire* of the owner about his identification of the gun. (*Id.* at 116) The owner testified that he had last seen the gun on the night of the crimes. (*Id.* at 117) The owner did not know if the gun was a revolver and denied having any knowledge about guns. (*Id.* at 117) The owner did not know what color the handle of the gun was and only saw the front of the barrel. (*Id.* at 118–19) The owner further testified (Doc. 13, Ex. 1, Trial Transcripts at 119–20):

| | |
|---|---|
| [Trial counsel:] | Did somebody tell you to testify that that was the gun involved in this case? |
| [Owner:] | Not somebody told me. He showed me. Then I came in the court, he showed me. |
| [Trial counsel:] | Who told you? |
| [Owner:] | He showed me, not told me. He showed me the gun. He said, ["]this is the gun,["] and I said, ["]yes, this was the gun.["] |
| [Trial counsel:] | You're one hundred percent positive this is the actual gun used in the incident against you? |
| [Owner:] | I cannot be one hundred percent sure because I'm — I'm — I never — as I — I was telling you, I never [have] seen the gun in my life, but — but it's — I'm very scared from them. And even though — |

Trial counsel objected to the admission of the gun based on the owner's testimony, and the trial court sustained the objection. (Doc. 13, Ex. 1, Trial Transcripts at 119–20)[4]

To demonstrate a *Giglio* claim, a petitioner must show "'. . . [1] that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and [2] that the falsehood was material.'" *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 949 (11th Cir. 2016) (quoting *Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1277 (11th Cir. 2005)). "A falsehood is material if there is any reasonable likelihood that it could have affected the result." *Raleigh*, 827 F.3d at 949 (quotation marks and citation omitted).

Because the store owner admitted that he was not certain that the gun was the same gun that the robber brandished and the trial court sustained the defense's objection to the admission of the gun based on the owner's indecisive testimony, Hernandez could not show that the owner's testimony about the gun was either false or material. Consequently, the state court did not unreasonably apply *Giglio*. *Maharaj*, 432 F.3d at 1314 ("[E]ven if Maharaj had established that Butler's testimony was false (which he did not), the falsehood was not material. Butler was thoroughly and vigorously cross-examined about the inconsistencies in his accounts, and Maharaj's counsel elicited testimony from Butler that he had lied under oath."); *Tompkins v. Moore*, 193 F.3d 1327, 1341 (11th Cir. 1999) ("Neither defense counsel nor the jury was or could have been misled by Dr. Diggs'[s] ambiguous testimony about the dental records. There was no false testimony about the existence of pre-mortem dental x-rays or records.").

---

[4] A detective identified the gun as a gun that he recovered from Hernandez's business, and the trial court admitted the gun into evidence based on that testimony. (Doc. 13, Ex. 1, Trial Transcripts at 181–82) Also, Slade identified the gun as the gun that Hernandez possessed during the crimes. (*Id.* at 216)

### Sub-claim A — Detective

The post-conviction court denied the *Giglio* claim based on the detective's testimony as follows (Doc. 13, Ex. 14 at 2–3) (state court record citations omitted):

> The Defendant also argues that the State did not correct [Deputy] Lopez when he testified that [the store owner] told him the gun was a silver revolver when [the store owner] had actually identified the gun as a semi-automatic. It does appear that at some point [the store owner] identified the gun as a semi-automatic. However, [the store owner] also testified that he was not familiar with guns. The Court does not find that the evidence was material. Slade described the gun that the Defendant had as [a] revolver which matched the one in evidence. Slade testified that he had seen Defendant with State's Exhibit 12 (the revolver) in his business. When [the store owner] was asked if someone had told him to testify that that was the gun used in the robbery, he said he identified it as such.

On cross-examination, the detective testified that he interviewed the store owner who correctly described the gun as a "silver revolver." (Doc. 13, Ex. 1, Trial Transcripts at 187–88) The detective refreshed his recollection with his report (*Id.*) which stated that the owner identified the gun as a revolver "silver in color." (Doc. 13, Ex. 1 at 13) A transcript of the interview shows that the owner instead described the gun as a "silver, semi-automatic" gun. (Doc. 13, Ex. 13, Appendix D at 1) In his deposition, the owner later described the gun as a "handgun" and denied knowing whether the gun was a revolver because he was not familiar with guns. (Doc. 13, Ex. 13, Appendix E at 1)

During trial, trial counsel thoroughly cross-examined the store owner about his identification of the gun. The owner (1) denied knowing if the gun was a revolver, (2) denied having knowledge about guns, (3) did not know what color the handle of the gun was and stated that he saw only the front of the barrel, (4) admitted that someone had identified the gun for him before trial, and (5) conceded that he was not "one hundred percent sure" that

the gun was the same gun that the robber had brandished. (Doc. 13, Ex. 1, Trial Transcripts at 116–20)

Despite the detective's misstatement about the store owner's identification of the gun on cross-examination, Hernandez could not have shown a reasonable likelihood that the misstatement could have affected the result of the trial. *Raleigh*, 827 F.3d at 949. The owner testified that the robber pointed a gun at him. (Doc. 13, Ex. 1 at 114) The detective found the gun at Hernandez's business (*Id.* at 181–82), and Slade identified the gun as the gun that Hernandez possessed during the crimes. (*Id.* at 216) Also, the surveillance video showed the robber point a gun at the owner. (*Id.* at 126)

Consequently, the jury did not rely on the detective's misstatement on cross-examination to conclude that Hernandez possessed a gun during the robbery and the state court did not unreasonably apply *Giglio*. *Maharaj*, 432 F.3d at 1314. *Accord Ventura*, 419 F.3d at 1281 ("Whether the false testimony offered in a particular case could in any reasonable likelihood have affected the judgment of the jury must be analyzed in light of a number of highly context-specific factual considerations, including the importance of the testimony of the falsely testifying witness to the government's case, the nature and significance of the falsehood, and, notably, to what extent the witness's testimony is substantially corroborated by other evidence.").

**Sub-claim B**

Hernandez asserts that the prosecutor falsely told the jury during closing argument: "As tight as insurance companies are, they decided that there's no fraudulent activity here." (Doc. 1 at 18) He raised this claim and other claims in Ground Four of his post-conviction motion. (Doc. 13, Ex. 13 at 13–14) The post-conviction court did not

address the merits of this specific claim (Doc. 13, Ex. 14 at 2–3) and instead generally denied Ground Four in the order. (Doc. 13, Ex. 14 at 4) He also raised the issue in his brief on appeal (Doc. 13, Ex. 19 at 17–20), and the state appellate court affirmed in an unexplained decision. (Doc. 13, Ex. 20)

Even though the state court did not specifically address the merits of this claim in the order, the state court is presumed to have adjudicated the claim on the merits. *Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits — but that presumption can in some limited circumstances be rebutted."). The state appellate court's unexplained decision is an adjudication on the merits owed deference under Section 2254(d), and Hernandez must show no reasonable basis for the denial of relief. *Richter*, 562 U.S. at 98.

In his post-conviction motion, Hernandez contended that the prosecutor's comment in closing argument was false and violated *Giglio*. (Doc. 13, Ex. 13 at 13) Hernandez does not cite "clearly established Federal law, as determined by the Supreme Court of the United States" that extends *Giglio* to a prosecutor's comment in closing argument. 28 U.S.C. § 2254(d)(1). A different legal standard applies to prosecutorial misconduct in closing argument. *Spencer v. Sec'y, Dep't Corrs.*, 609 F.3d 1170, 1182 (11th Cir. 2010) ("To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant.") (citation and quotation marks omitted).

Even so, the store owner testified that he submitted a claim to his insurance company for the loss from the robbery, and the insurance company did not investigate him for fraud.

(Doc. 13, Ex. 1, Trial Transcripts at 130, 131, 141–42) The prosecutor drew a reasonable inference from this testimony that the insurance company found no fraud, and "[a]ccurate statements do not violate the *Giglio* rule." *Smith v. Sec'y, Dep't Corrs.*, 572 F.3d 1327, 1334 (11th Cir. 2009).

Ground Seven is **DENIED**.

**Ground Eight**

Hernandez asserts that newly discovered evidence justifies setting aside his convictions, citing *Jones v. State*, 709 So. 2d 512 (Fla. 1998). (Doc. 1 at 19–21) He contends that he discovered after trial that the Florida Department of Financial Services found that the store owner committed insurance fraud at the time of the crimes but a prosecutor declined to charge the owner with a crime. (Doc. 1 at 19) He further contends that he discovered after trial that a prosecutor concluded that Slade was an incredible witness who could not provide testimony in support of a prosecution of the owner for insurance fraud. (Doc. 1 at 20) Hernandez argues that the jury would have acquitted him if trial counsel had presented this new evidence at trial. (Doc. 1 at 20)[5]

This newly discovered evidence claim is not cognizable on federal habeas. *Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir. 1988) ("Newly discovered evidence which goes only to the guilt or innocence of the petitioner is not sufficient to require habeas relief.").

Ground Eight is **DENIED**.

---

[5] Documents attached to Hernandez's post-conviction motion show that a prosecutor declined to charge the store owner with workers compensation fraud. (Doc. 13, Ex. 13, Appendix G) Hernandez was the complainant. (*Id.*) The memorandum stated: "[T]he criminal investigation was previously worked upon or reviewed by at least three Division of Insurance Investigators who determined no criminal violations had occurred." (*Id.*)

**Ground Ten**

Hernandez asserts that trial counsel was ineffective for not arguing an expanded motion for judgment of acquittal. (Doc. 1 at 22–23) He contends that trial counsel should have argued that the evidence did not prove burglary because Hernandez was invited behind the counter at the market. (Doc. 1 at 22) The post-conviction court denied this claim as follows (Doc. 13, Ex. 14 at 4) (state court record citations omitted):

> . . . Defendant argues that trial counsel was ineffective for failing to argue that the Defendant was invited by Slade into the premises and that Defendant did not know that the area behind the counter was not open to the public. It was established that the business was still open to the public and Defendant had a right to be in the store as a customer. Counsel argued that the store was open to the public and the Court denied that argument. The Court also finds that the jury could infer that Defendant knew that the area behind the counter, where the money and registers were, was not open to the public. Defendant himself jumped over the counter dressed in a ski mask brandishing a firearm. The Court finds that such argument would be without merit.

Trial counsel moved for a judgment of acquittal and argued that the prosecution had not proven burglary because the market was open to the public. (Doc. 13, Ex. 1, Trial Transcripts at 249–51) The trial court reviewed the surveillance video of the crimes and concluded: "The film shows the robber jumping over the counter, going back behind the counter where the public is not allowed." (*Id.* at 251) The owner testified that he employed Slade and that he never gave Hernandez permission to come behind the counter and take the money. (Doc. 13, Ex. 13, Trial Transcripts at 103–04, 114, 129–30)

Because the evidence viewed in the light most favorable to the prosecution proved that Hernandez did not have permission to go behind the counter, an expanded motion would not have succeeded, and the state court did not unreasonably apply *Strickland*. *Jackson*

*v. State*, 18 So. 3d 1016, 1025 (Fla. 2009) ("If the State presents direct evidence [of guilt] . . ., the trial court's determination will be affirmed if the record, viewed in the light most favorable to the State, contains competent, substantial evidence supporting each element of the offenses."); *Johnson v. State*, 786 So. 2d 1162, 1164 (Fla. 2001) ("We conclude that the question of whether the area behind the counter was open to the public [in a burglary case] is a question of fact for the jury to decide.").

Ground Ten is **DENIED**.

## REMEDY

The Court grants relief on Ground One, an ineffective assistance of appellate counsel claim; Ground Nine, an ineffective assistance of trial counsel claim for not requesting a jury instruction; and Ground Four, an ineffective assistance of trial counsel claim for not conveying a plea offer. "Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" *Lafler*, 566 U.S. at 170 (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)). "[A] remedy must 'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Lafler*, 566 U.S. at 170 (citations omitted). If "the sole advantage a defendant would have received under the plea is a lesser sentence," and the defendant shows a reasonable probability that he would have accepted the plea but for trial counsel's deficient performance, then "the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." *Lafler*, 566 U.S. at 171.

The Court finds that the prosecutor extended a five-year plea offer, trial counsel failed to communicate that offer to Hernandez, and Hernandez would have accepted the offer. Even though Hernandez faced a lowest permissible sentence of 99.4 months under Florida's sentencing code (Doc. 13, Ex. 1 at 80), the negotiated plea would have allowed the sentencing court to depart downward and sentence Hernandez to the five years. §§ 921.0026(2)(a) and 921.00265(1), Fla. Stat. Hernandez has served more than twelve years in prison. The Court exercises its discretion and finds that justice requires resentencing Hernandez to time served. To neutralize the taint of the constitutional violation on Ground Four, Hernandez must be released.[6]

Accordingly, it is **ORDERED**:

1.     Hernandez's Section 2254 petition (Doc. 1) is **GRANTED** in part and **DENIED** in part. A writ commanding Hernandez's release will issue unless the State of Florida affords him a new sentencing hearing within **60 DAYS** in *State v. Hernandez*, No. 09-CF-2318 (Fla. 10th Jud. Cir.), ensures that he receives a sentence of time served for both the robbery and the burglary convictions, and ensures that he is immediately released. The Respondent must notify the Court of Hernandez's release from custody no later than **14 DAYS** after his release.

2.     The **CLERK** is directed to enter a judgment for Hernandez on Ground One, Ground Four, and Ground Nine, Sub-claim A and against Hernandez on all remaining grounds and **ADMINISTRATIVELY CLOSE** this case.

---

[6] Hernandez's release will render moot relief on Ground One and Ground Nine.

## <u>DENIAL OF CERTIFICATE OF APPEALABILITY</u><br><u>AND LEAVE TO APPEAL *IN FORMA PAUPERIS*</u>

For the grounds denied, Hernandez neither makes a "substantial showing of the denial of a constitutional right," nor shows that reasonable jurists would find debatable both the merits of the underlying claim and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Consequently, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on December 9, 2022.

_____<br>
MARY S. SCRIVEN<br>
UNITED STATES DISTRICT JUDGE